COY D. BARBEE AND VIRGINIA T. BARBEE v. ATLANTIC MARINE SALES & SERVICE, INC., AND MAKO MARINE, INC.

---

MAKO MARINE, INC. v. ATLANTIC MARINE SALES AND SERVICE, INC., AND CHRISTOPHER FLOYD

No. 9226SC1141

(Filed 2 August 1994)

1. **Unfair Competition or Trade Practices § 39 (NCI4th)— sale of defective boat—bad faith relevance on commercial use exclusion—sufficiency of evidence of unfair practice**

     The evidence was sufficient to support the trial court's submission to the jury of issues of unfair and deceptive acts or practices under N.C.G.S. § 75-1.1 where the evidence tended to show that plaintiffs complained about water accumulating in the stern of a boat, which was manufactured in 1985 by the defendant, from

the time they bought it in May 1988 until the manufacturer's representative visited the boat in July 1989; after the representative's visit, defendant refused to take any further action, insisting that the boat was being used commercially and was thus excepted from the written warranty; defendant's former warranty manager testified that the commercial exclusion applied only to boats manufactured after 1987; and this was sufficient evidence for the jury to conclude that, once defendant realized that the problem with plaintiffs' boat could not be remedied, it seized upon the commercial use exclusion in a bad faith attempt to avoid responsibility for the defective boat.

**Am Jur 2d, Consumer and Borrower Protection §§ 302 et seq.; Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

2. **Unfair Competition or Trade Practices § 54 (NCI4th)— attorney's fees—reasonableness—sufficiency of evidence**

The evidence was sufficient to support the trial judge's findings and those findings in turn supported the award of attorney's fees in an unfair practices case where the record was rife with evidence of defendant's intractability; this evidence was sufficient to support the court's findings on the issues of willfulness and refusal to resolve the matter; and affidavits supported the court's finding on the reasonableness of the fees where they revealed the time spent by the attorneys and their support staffs, the complexity of the issues, the length and complexity of the trial, the customary hourly fee for each of the attorneys, and the level of experience of each of the attorneys.

**Am Jur 2d, Consumer and Borrower Protection §§ 302 et seq.; Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

**Award of attorneys' fees in actions under state deceptive trade practice and consumer protection acts. 35 ALR4th 12.**

3. **Limitations, Repose, and Laches § 48 (NCI4th)— unfair practices claim—no bar by state of limitations**

Plaintiffs' claim against a boat manufacturer for unfair and deceptive practices was not barred by the four-year statute of lim-

itations of N.C.G.S. § 75-16.2 where plaintiffs' cause of action could not have accrued until after they purchased the boat, and they purchased the boat on 15 May 1988 and instituted this action on 27 February 1990.

**Am Jur 2d, Limitation of Actions § 82.**

**When statute of limitations commences to run on action under state deceptive trade practice or consumer protection acts. 18 ALR4th 1340.**

4. **Unfair Competition or Trade Practices § 46 (NCI4th)— treble damages on unfair practices claim—recovery for breach of implied warranty—double recovery**

The trial court's entry of judgments against defendant manufacturer of a boat for treble damages on an unfair and deceptive practices claim and against defendant seller of the boat for breach of implied warranty combined with the court's order that defendant manufacturer fully indemnify defendant seller allowed plaintiff double recovery, since the injury plaintiffs suffered because of the breach of warranty was compensated by the award for the unfair and deceptive practices claim.

**Am Jur 2d, Damages §§ 566 et seq.**

Appeal by defendant Mako Marine, Inc. from judgment entered 9 April 1992 by Judge F. Fetzer Mills in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 October 1993.

After our decision was filed in *Barbee v. Atlantic Marine Sales and Service*, 113 N.C. App. 80, 437 S.E.2d 682 (1993), plaintiffs petitioned for rehearing. We granted that petition and now replace that opinion with the following one.

This appeal arises out of plaintiffs' claims against defendant Atlantic Marine Sales and Service, Inc. (Atlantic) for an allegedly defective boat which Atlantic sold to plaintiff and against defendant Mako Marine, Inc. (defendant), which manufactured the boat. After a jury trial, the trial court entered judgments in favor of the plaintiffs against defendant, ordered defendant to indemnify Atlantic for any liability it might have to plaintiffs and ordered defendant to pay attorney's fees to plaintiff and Atlantic. From these judgments, defendant appeals.

*Hedrick, Eatman, Gardner & Kincheloe, by John F. Morris and Jeffrey D. Penley, and Blair, Conaway, Bograd & Martin, by Bentford E. Martin and Brien D. Stockman, for appellant Mako Marine, Inc.*

*Horack, Talley, Pharr & Lowndes, P.A., by Robert C. Stephens and James H. Pulliam, for plaintiff-appellees Coy D. Barbee and Virginia T. Barbee.*

· *Parker, Poe, Adams & Bernstein, by William E. Poe, Frank A. Hirsch, Jr., and Andrew D. Shore for defendant-appellee Atlantic Marine Sales & Service, Inc.*

McCRODDEN, Judge.

This case tests the propriety of (I) the trial court's instructions to the jury, (II) its submission to the jury of issues of unfair and deceptive acts or practices under Chapter 75 of the General Statutes, (III) the court's award of attorney's fees under the same chapter, (IV) its refusal to dismiss plaintiff's action on the basis that the statute of limitations had run, and (V) the amount of damages the trial court ordered it to pay.

The pertinent facts in this case are as follows. In 1985, defendant manufactured and sold to Atlantic a model 285-B boat hull, a 28-foot craft intended to be powered by outboard engines. Atlantic outfitted the hull with engines and accessory equipment. It never titled the boat and used it only as a demonstration model before selling it to plaintiffs on 15 May 1988. Plaintiffs purchased the boat with the intention of chartering it for fishing and diving. Almost immediately after purchasing the boat, they complained to Atlantic that excessive water was accumulating in the stern of the boat when it was idling or anchored in the open sea. As water flowed into the boat, the stern of the boat was pushed deeper in the water, allowing more water to flow over the back wall of the boat, known as the transom. As the boat filled with water, the scuppers, holes in the bottom of the transom out of which water in the boat is supposed to drain, went below the waterline and were rendered ineffective. At that point, the only way to drain the boat was to drive it fast enough to plane, bringing the scuppers above the waterline.

Atlantic contacted defendant to inform it of the problem and defendant offered several suggested solutions to the problem. Each

of these suggestions, however, proved ineffective. After repeated attempts to remedy the problem, plaintiffs' son, who was the principal operator of the boat, wrote to defendant stating that he thought the problem could be solved by keeping water out of the boat, instead of trying to remove it more quickly. Defendant responded to the letter by saying that it was "the inherent nature of water to pass over the transom on an outboard powered boat" and recommended two modifications intended to minimize the amount of water entering the boat. Plaintiffs rejected both of these suggestions. Atlantic requested that defendant send a representative to examine the boat and assess the problem. On 25 July 1989, Marty Bistrong, defendant's vice president of sales, visited Atlantic's marina. He refused, however, to ride in the boat or to examine the problem. Thereafter, David Floyd, Atlantic's vice president, contacted defendant on plaintiffs' behalf. Defendant informed Floyd that since the boat was being used as a charter boat, a fact Bistrong had observed during his visit, it would do nothing further for plaintiffs. Defendant suggested instead that plaintiffs trade the model 285-B boat for a new or different model, a suggestion plaintiffs declined to follow.

On 27 February 1990, plaintiffs filed this action, alleging breach of an implied warranty of fitness for a particular purpose, breach of an implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, breach of contract, breach of express warranty, violations of N.C. Gen. Stat. § 75-1.1 (1988) (unfair and deceptive acts or practices), and negligent failure to warn of known dangerous defects in the design of the boat hull. Defendant cross-claimed against Atlantic which in turn sought indemnity from defendant and Chapter 75 damages for its efforts in effecting a remedy for the alleged design defects. The court directed verdicts in favor of Atlantic on its cross-claim for indemnity against defendant, in favor of Atlantic on plaintiffs' claim of breach of express warranty against it, and in favor of Atlantic and defendant on plaintiffs' Magnuson-Moss, breach of contract and negligence claims. It submitted to the jury the balance of the issues. After verdicts in plaintiffs' favor, the trial court entered judgments against defendant in the amounts of $178,732.65 for violations of N.C.G.S. § 75-1.1, which represented treble damages pursuant to N.C. Gen. Stat. § 75-16 (1988); $49,980.00 for attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1 (1988); and $59,557.55 for breach of warranty. The court also ordered defendant to compensate Atlantic $37,185.00 for a violation of N.C.G.S. § 75-1.1 and $43,238.00 for attorney's fees.

I.

The first set of arguments we review pertains to the trial court's peremptory instruction on the existence of an express warranty. Defendant did not assign error to the court's peremptory instruction on the existence of an express warranty in the record on appeal, and indeed, failed to object to the court's submission of this issue to the jury. Under N.C.R. App. P. 10(a), we must confine our consideration to errors assigned in the record on appeal. Moreover, under Rule 10(b), a party may not assign error to any portion of the jury charge unless he objects thereto before the jury retires. The trial court must be given the opportunity to correct any allegedly erroneous statement in its instruction. *See Rudd v. Stewart*, 255 N.C. 90, 96, 120 S.E.2d 601, 606 (1961). In the instant case, therefore, defendant not only failed to assign error, but it failed to lay the foundation for assigning error. We decline its invitation to exercise our discretion under N.C.R. App. P. 2 to suspend or vary the requirement of this rule, and we consequently reject the first part of defendant's argument.

For similar reasons, we also decline to review the second portion of defendant's attack on the jury instructions. Despite the trial court's request for corrections, defendant made no objection to the instructions to which it has assigned error, thus failing to provide a foundation for its assignment.

II.

[1] We next consider defendant's set of arguments concerning the court's submission to the jury of issues of unfair and deceptive acts or practices under N.C.G.S. § 75-1.1. Defendant argues that there was insufficient evidence as a matter of law to support the findings of the jury as to each of the four issues of fact submitted by the court.

N.C.G.S. § 75-1.1 declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce. . . ." Unfair practices are not subject to a single definition. Generally, however, "a practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Whether an act or practice is unfair or deceptive is to be determined by all the facts and circumstances surrounding the transaction. *Id.*

In an action for unfair and deceptive acts or practices the jury is to find the facts of the occurrence, *Hardy v. Toler*, 288 N.C. 303, 218 S.E.2d 342 (1975), determine in what amount, if any, the plaintiff was injured, and decide whether the occurrence was the proximate cause of those injuries. *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 184, 268 S.E.2d 271, 273-74 (1980). It is then up to the trial court to decide whether the defendant's behavior was unfair or deceptive. *Hardy*, 288 N.C. at 310, 218 S.E.2d at 346-47.

In this case the trial court submitted to the jury four issues of fact, to each of which the jury returned an affirmative answer. The jury also found that plaintiffs had suffered damages in the amount of $59,577.55 as a proximate result of defendant's actions. In its judgment, the trial court stated that any one of the four factual situations, standing alone, would constitute an unfair and deceptive practice. Defendant does not contend that the court abused its discretion in so doing. The inquiry posed by defendant's argument is, therefore, whether there was sufficient evidence to support the jury's findings as to any one of the four bases.

We find that there was ample evidence to justify the jury's affirmative answer to the following question:

Did Mako Marine do any one or more of the following in selling a 1985 Mako 285-B style hull to Atlantic for $35,273 on June 24, 1985 which Atlantic, in turn, sold to the Barbees on May 15, 1988 for $37,464:

. . . .

. . . Represent that the boat would be covered by Mako's warranty, then after the boat was purchased by the Plaintiffs Barbee, unreasonably refuse to remedy the major defect, which permitted water to come over the transom and remain in the boat to the point that the boat was rendered useless for its intended purpose?

The plaintiffs' evidence tended to show that they complained about water accumulating in the stern of the boat from the time they bought the boat until July 1989, when Bistrong visited Atlantic's marina. David Floyd testified that after Bistrong's visit, defendant refused to take any further action, insisting that the boat was being used commercially and was thus excepted from the written warranty. In response to plaintiffs' pleas, defendant suggested only that plaintiffs trade the boat. Defendant, however, made no offer of concession,

such as offering to credit the price plaintiffs had paid for their boat toward a new boat. Kevin Rogers, defendant's former warranty manager, testified that the written warranty, which by its terms did not cover boats used commercially, applied only to boats manufactured after 1987, two years after defendant sold its boat to Atlantic. This was sufficient evidence for the jury to conclude that once the defendant realized that the problem with plaintiffs' boat could not be remedied, it seized upon the commercial use exclusion in a bad faith attempt to avoid responsibility for the defective boat. Thus, the court properly submitted the issue of unfair and deceptive acts or practices.

## III.

[2] Defendant next argues that the court's award of attorney's fees in favor of plaintiff and Atlantic was erroneous since the fees were not reasonable and they were not supported by sufficient findings of fact.

A prevailing party in an action under N.C.G.S. § 75-1.1 may recover a reasonable attorney's fee upon a finding by the trial court that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit. . . ." N.C.G.S. § 75-16.1. The award or denial of attorney's fees under section 75-16.1 is within the sole discretion of the trial judge. *Borders v. Newton*, 68 N.C. App. 768, 770, 315 S.E.2d 731, 732 (1984). The court must make specific findings of fact that the actions of the party charged with violating Chapter 75 were willful, that he refused to resolve the matter fully, and that the attorney's fee was reasonable. For us to determine whether such award is reasonable, the record on appeal must contain findings of fact that support the award. *Lapierre v. Samco Development Corp.*, 103 N.C. App. 551, 561, 406 S.E.2d 646, 651 (1991). "Appropriate findings include findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney." *Id.*

In this case, the court made the following statements in its judgment:

[E]ach act separately enumerated under 10(a)-(d) is willful and constitutes adequate grounds for the award of attorneys' fees to the [plaintiffs] and Atlantic from [defendant] pursuant to N.C.G.S. § 75-16.1. The Court also concludes in its discretion after due

deliberation that there has been an unwarranted refusal by [defendant] to fully resolve the matter which constitutes a basis of this suit.

. . . .

After reviewing the Affidavits of [plaintiffs' attorneys] and of [Atlantic's attorneys], and deliberating on the case presented, I conclude that the attorneys' fees and expenses in the amount of $49,980.00 [for plaintiffs] and in the amount of $43,238.00 for Atlantic and Floyd were reasonable in light of the complexity of the facts and legal issues presented to the jury and the length of these proceedings.

During the hearing, the trial court also adopted the affidavits of the attorneys as his findings on the issue of the reasonableness of the fees.

The record is rife with evidence of defendant's intractability, and such evidence is sufficient to support the court's findings on the issues of willfulness and refusal to resolve the matter. Likewise, the affidavits adequately support the court's finding on the reasonableness of the fees. They reveal the time spent by the attorneys and their support staffs, the complexity of the issues, the length and complexity of the trial, the customary hourly fee for each of the attorneys, and the level of experience of each of the attorneys. There was ample evidence in the record to support the judge's findings and those findings in turn support the award.

IV.

[3] Defendant's fourth argument, that plaintiffs' Chapter 75 claim was barred by the statute of limitations, is meritless. The applicable statute of limitation provides, in pertinent part, that "[a]ny civil action brought under this Chapter to enforce the provisions thereof shall be barred unless commenced within four years after the cause of action accrues." N.C. Gen. Stat. § 75-16.2 (1988). In general, a cause of action accrues when "the right to institute and maintain a suit arises." *Motor Lines v. General Motors Corp.*, 258 N.C. 323, 325, 128 S.E.2d 413, 415 (1962). Of course, plaintiffs could not have instituted an action against defendant for unfair and deceptive acts or practices, and their cause of action therefor could not have accrued, before they purchased the boat. Since plaintiffs purchased the boat on 15 May 1988 and instituted this action on 27 February 1990, N.C.G.S. § 75-16.2 does not bar their action.

V.

**[4]**   Defendant finally argues that the court's entry of judgments against defendant for treble damages on the N.C.G.S. § 75-1.1 claim and against Atlantic for breach of implied warranty combined with the order that defendant fully indemnify Atlantic allowed plaintiff double recovery. We agree.

Although the judgment on the breach of warranty claim was actually entered against Atlantic, the court's order that defendant indemnify Atlantic for any liability makes it clear that the defendant was being held liable for violation of N.C.G.S. § 75-1.1 and the breach of warranty.

The injury plaintiffs suffered because of the breach of warranty was compensated by the award for the Chapter 75 claim against defendant. Indeed, the jury found that the plaintiffs had suffered precisely the same amount of damages, $59,577.55, for each of those claims. The court, having found that the defendant's acts constituted an unfair and deceptive practice, properly trebled that amount and entered judgment thereon. However, by also entering judgment against Atlantic on the breach of warranty claim, which was based on the selfsame course of conduct, the court improperly allowed plaintiffs double recovery. *See Marshall v. Miller*, 47 N.C. App. 530, 542, 268 S.E.2d 97, 103 (1980), *modified on other grounds and aff'd*, 302 N.C. 539, 276 S.E.2d 397 (1981).

On the basis of this, we order that the trial court modify its judgment to reflect that any amount Atlantic pays on the judgment against it be credited toward plaintiffs' judgment against defendant. We affirm the balance of the trial court's actions, including its order that defendant indemnify Atlantic "as to any and all liability . . . ."

Modified in part, affirmed in part.

Judges JOHNSON and COZORT concur.