**MCDONALD BROTHERS, INC., Plaintiff,**

v.

**TINDER WHOLESALE, LLC, Defendant.**

No. 1:03CV00817.

United States District Court, M.D. North Carolina.

April 6, 2005.

Thomas M. Van Camp, Pinehurst, NC, for Plaintiff.

Brenda Straub McClearn, Greensboro, NC, for Defendant.

## MEMORANDUM OPINION *and* ORDER

OSTEEN, District Judge.

Plaintiff McDonald Brothers, Inc. ("McDonald"), a North Carolina corporation with its principal place of business in Moore County, North Carolina, brings this diversity action against Defendant Tinder Wholesale, LLC ("Tinder"), a Virginia limited liability company with its principal place of business in Warrenton, Virginia. Plaintiff brings claims against Defendant for breach of the implied warranty of merchantability; breach of the implied warranty of fitness for a particular purpose; breach of express warranty; indemnity; and unfair and deceptive trade practices, N.C. Gen.Stat. § 75–1.1 (" § 75–1.1"). This matter is now before the court on Defendant's second motion to dismiss, or in the alternative, for summary judgment, with exhibits and affidavits in support.

For the reasons set forth herein, Defendant's motion to dismiss will be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

After Plaintiff instituted this diversity action, Defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment in lieu of an answer. Defendant filed the affidavit of W. Michael Tinder, Sr., the manager and president of Defendant, and exhibits in support of its motion. Plaintiff responded by filing a Motion to Allow Discovery Prior to Ruling on Defendant's Dispositive Motions, pursuant to Rules 12(b) and 56(f) of the Federal Rules of Civil Procedure. Contemporaneously therewith and in support of its motion, Plaintiff filed affidavits of Angus A. McDonald, Jr., president of Plaintiff corporation, and Thomas M. Van Camp, attorney for Plaintiff, both of whom outlined issues requiring discovery. Notwithstanding its motion to allow discovery, Plaintiff subsequently filed a brief in opposition to Defendant's motion[1] along with six affidavits and supporting exhibits. Shortly thereafter, Plaintiff amended its complaint. Defendant then filed a second motion to dismiss or, in the alternative, for summary judgment. All motions before the court are now fully briefed.

The court must first decide whether Defendant's motion should be treated as one for dismissal or summary judgment. Rule 12(b) of the Federal Rules of Civil Procedure ("Rule 12(b)") provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judg-

---

**1.** The court notes Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss and Motion for Summary Judgment does not comply with the Local Rules of Civil Practice. While Plaintiff's brief does comply with the twenty-page limit imposed by L.R. 7.3(d), it appears the page limit requirement was met only after reducing the font size and/or line spacing below the requirements set forth in L.R. 7.1(a). The better, and more forthright, practice is to move for leave to file an over-length brief. Subsequent noncomplying briefs will be stricken by the court.

ment and disposed of as provided in Rule 56.

Fed.R.Civ.P. 12(b). Whether to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion, and therefore whether to convert a motion under Rule 12(b)(6) to one under Rule 56, is within the discretion of the court. *Pueschel v. United States,* 369 F.3d 345, 353 n. 3 (4th Cir.2004). The court's discretion, however, is not limitless. As a general rule, summary judgment is only appropriate after adequate time for discovery. *Evans v. Technologies Applications and Serv. Co.,* 80 F.3d 954, 961 (4th Cir.1996). The court does not have the authority "to completely deny a party all opportunity to take depositions or to get affidavits essentially needed to get a fair trial of [its] case." *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 306, 88 S.Ct. 1575, 1601, 20 L.Ed.2d 569 (1968). Even if the court were to conclude that it should consider "matters outside the pleading," the court would be required to give the parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b); *see* Fed. R.Civ.P. 56(f); *see also Gay v. Wall,* 761 F.2d 175, 177–78 (4th Cir.1985) (holding trial court's treatment of motion to dismiss as one for summary judgment was an abuse of discretion where plaintiff was not given a reasonable opportunity for discovery).

Here, the court is convinced of the present inappropriateness of summary judgment. The court has not yet issued a pretrial order and the parties have had no opportunity for discovery, either formal or informal. Additionally, Plaintiff has filed affidavits complying with Rule 56(f) of the Federal Rules of Civil Procedure. The affidavits identify the need for discovery on factual issues, such as the execution of certain documents, course of conduct between the parties, handling and alteration of the products in question, and representations and conduct of Defendant after notification of the product defects. (Van Camp Aff. ¶ 5.) Plaintiff asserts compelling arguments that the determination of these factual issues, and more, affect the disposition of its claims and any relevant defenses. Under the circumstances, and finding no prejudice to Defendant, the court sees little reason to address summary judgment at this time and will address Defendant's arguments for dismissal of Plaintiff's amended complaint.

## II. FACTUAL BACKGROUND

The following facts are presented in the light most favorable to Plaintiff, as alleged in Plaintiff's amended complaint.[2]

Plaintiff McDonald is in the business of selling building products and materials to contractors and other retail customers in and around Moore County, North Carolina. Plaintiff purchases products from numerous sellers, manufacturers, and distributors, including Defendant Tinder, a Virginia-based wholesale seller and distributor of lumber products. Plaintiff began purchasing lumber products from Defendant in late 2001 or early 2002.[3]

---

2. In considering a motion to dismiss, the court must construe the facts in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994).

3. Beginning in the spring of 1999, Plaintiff purchased lumber products from W.M. Tinder, Inc., a Virginia-based corporation. On or about January 2, 2000, W.M. Tinder, Inc., assigned its rights and liabilities to Defendant. Sometime in late 2001 or early 2002, the invoices received by Plaintiff for purchased products reflected a name change from W.M.

When purchasing building materials from Defendant, Plaintiff would place an order and the product would be shipped to Plaintiff's place of business in Moore County, North Carolina. The shipments would be accompanied by a delivery ticket, which identified the product, but not the price, of the lumber shipped. Approximately 10–20 days after the product was received, Plaintiff would receive an invoice from Defendant. The invoice would include the product sold, quantity, and price, among other information. The reverse side of the invoice was pre-printed with eleven "Terms and Conditions." These terms and conditions included, *inter alia*, provisions for a payment schedule, default, handling charges, finance charges, governing law, and limitations of liability. The terms and conditions did not, however, exclude the warranties of merchantability or fitness for a particular purpose, and did not state the product was being sold "as is." (Am.Compl.¶ 16.)

From May 2002 to September 2002, Plaintiff purchased from Defendant finger-jointed trim boards used in home construction. Plaintiff purchased trim boards of various dimensions. The trim boards were originally purchased by Defendant from Tumac Lumber Co. ("Tumac"), a wood products sourcing and marketing company located in Redding, California. Once acquired from Tumac, Defendant applied a primer coat to the trim boards and resold the boards to Plaintiff. Plaintiff, in turn, sold the trim boards to several contractors in Moore County, North Carolina, including Bowness Construction ("Bowness").

Bowness later installed the trim boards on several large residential homes constructed in 2002 and 2003, including the Bahner and Hardinger jobs.

In the early fall of 2002, Bowness notified Plaintiff that some of the trim boards had failed in numerous places at both the Bahner and Hardinger jobs. More particularly, the trim boards had separated at the finger joints due to improper or insufficient application of glue or adhesive. Plaintiff immediately notified Defendant of the defect. In October 2002, Ken Rogerson, one of Defendant's representatives, visited the job sites and acknowledged the problem. Defendant subsequently indicated, as it had done on several prior warranty claims regarding other products, it would honor Plaintiff's warranty claim and instructed Plaintiff to replace the defective trim.

In February 2003, Plaintiff received another complaint from Bowness regarding failure of the trim boards. Plaintiff again immediately notified Defendant of the defect. Defendant sent Stan Hedgecock, another of its representatives, to the Moore County job site on March 4, 2003 and March 27, 2003. Mr. Hedgecock took samples of the trim boards for testing and evaluation.

On March 31, 2003, Walter Jones, Defendant's sales manager, emailed Mr. McDonald regarding the trim board failure. Mr. Jones stated Defendant needed to investigate the problem in order to determine the "origin of the affected product." (Am. Compl. ¶ 22.) Mr. Jones said once

Tinder, Inc. to Tinder Wholesale, LLC. The parties dispute the legal ramifications of the assignment. In particular, the parties disagree whether a document entitled "Terms and Conditions," sent by W.M. Tinder, Inc. to Plaintiff and subsequently signed by Mr. McDonald, also control each transaction between Plaintiff and Tinder Wholesale, LLC.

Defendant, however, has invited the court, "for purposes of Tinder's dispositive motion, ... [to] disregard these documents and the apparent factual dispute relating to them." (Reply Br. Supp. Def.'s Mot. Dismiss or, Alternative, Summ. J. at 2.) The court accepts Defendant's invitation.

Defendant had determined the origin, Defendant would be able to "address the questions of product failure, job site conditions, and installation." (*Id.*) Defendant indicated to Plaintiff if the product was proven to be defective, Defendant would honor Plaintiff's warranty claim and pay for the cost of repair.

On April 28, 2003, Mr. Jones again emailed Mr. McDonald. Mr. Jones requested Mr. McDonald provide Defendant with information as to "what you are looking for to fix the problem" and requested estimates of material and labor to repair the problem. (*Id.* ¶ 23.) Bowness subsequently provided Plaintiff a repair estimate of $150,000 for labor and materials to replace the defective trim boards. Plaintiff submitted that estimate to Defendant.

Plaintiff also retained Howard Rigsby, an engineer with Accident Reconstruction located in Raleigh, North Carolina, to inspect and test the trim boards on two of the homes constructed by Bowness, as well as to test boards which Plaintiff retained at its retail facility. Mr. Rigsby determined, after completing his tests, that the trim boards did not meet the minimum requirements set forth in ASTMD 5572–95, Standard Specification for Adhesives used in Finger Joints of Non–Structural Lumber Products. Mr. Rigsby concluded some of the trim boards sold by Defendant to Plaintiff were defective in connection with the application of the finger joints. Plaintiff submitted the report to Defendant.

In reliance on Defendant's representations that it would honor Plaintiff's warranty claims, Bowness' repair estimate, and the engineer's report, Plaintiff agreed to pay to Bowness the costs to repair and replace the defective trim, which was in excess of $150,000. Plaintiff then borrowed the funds necessary to pay Bowness, incurring interest charges.

Defendant later refused to pay Plaintiff's warranty claim. Plaintiff brought suit for breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, breach of express warranty, indemnity, and unfair and deceptive trade practices.[4]

## III. ANALYSIS

Defendant argues Plaintiff's complaint should be dismissed for two reasons: (1) this court lacks subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"); and (2) Plaintiff has failed to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). As disposition of the amended complaint is dependent upon the court having jurisdiction, the court will first address whether it has subject matter jurisdiction over Plaintiff's claims. If it has jurisdiction, the court will next consider whether Plaintiff states claims upon which relief can be granted.

### A. Subject Matter Jurisdiction[5]

Defendant argues in its brief that this court lacks subject matter jurisdiction be-

---

**4.** The parties disagree whether Virginia or North Carolina law applies to Plaintiff's claims for breach of express and implied warranties, but agree Plaintiff's claims for indemnity and unfair and deceptive trade practices are governed by North Carolina law. Defendant concedes, however, that "North Carolina and Virginia law are substantively identical in all matters relevant to warranty aspects of

this case." (Br. Support Def.'s Mot. Dismiss or, Alternative, Summ. J. at 8–9.) Therefore, the court makes no determination about applicable law. Where the applicable law is in dispute, the court will cite to North Carolina and Virginia law.

**5.** For purposes of determining jurisdiction, the court is not limited to the four corners of the pleadings. Only motions under Rule

cause Plaintiff cannot meet the amount in controversy requirement for diversity jurisdiction contained in 28 U.S.C. § 1332. More particularly, Defendant argues the terms and conditions on the back of each billing invoice and a statement regarding handling and use of the products that was sent with each shipment serve to exclude or modify the implied warranties of merchantability and fitness for a particular purpose. (Br. Support Def.'s Mot. Dismiss or, Alternative, Summ. J. at 4–6.) Defendant also argues these documents exclude incidental and consequential damages and limit Plaintiff's remedies to return of the materials purchased for a full refund. (*Id.*) As a result of these exclusions or modifications, Defendant argues Plaintiff can recover compensatory damages no greater than the amount paid by Plaintiff for the trim boards, or $21,500. (*Id.* at 6–7; *see* Am. Compl ¶¶ 45, 51) Therefore, even if Plaintiff could recover treble damages under § 75–1.1, which Defendant argues it cannot, Plaintiff falls short of the required amount in controversy. For the reasons given below, the court will deny Defendant's motion to dismiss for lack of subject matter jurisdiction.

■ District courts have diversity jurisdiction over all "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States." 28 U.S.C. § 1332(a)(1). When a defendant challenges subject matter jurisdiction, the plaintiff has the burden of establishing jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942). However, the defendant is ordinarily bound by the amount claimed by the plaintiff unless "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). "Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir.1995).

■ In determining "legal certainty," the federal courts must look to state law to determine the nature and extent of the right the plaintiff is seeking to have enforced. *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352–53, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961). This includes applying the forum state's rules regarding the applicable measure of damages and the availability of special and punitive damages. *See Vance v. W.A. Vandercook Co.*, 170 U.S. 468, 18 S.Ct. 645, 42 L.Ed. 1111 (1898). Courts must be careful, however, that "under the guise of determining jurisdiction, the merits of the controversy between the parties be summarily decided without the ordinary incidents of a trial, including the right to a jury." *Smithers v. Smith*, 204 U.S. 632, 645, 27 S.Ct. 297, 300, 51 L.Ed. 656 (1907).

■ On its face, Plaintiff's complaint sufficiently alleges an amount in controversy exceeding the $75,000 statutory requirement. Plaintiff alleged Bowness' estimate of repair was in excess of $150,000, which Plaintiff paid upon the representations

12(b)(6) are subject to conversion into summary judgment when matters outside the pleading are considered. *See* Fed.R.Civ.P. 12(b). Courts may consider affidavits and other extrinsic evidence when determining the existence of subject matter jurisdiction.

*See, e.g., Saval v. BL Ltd.*, 710 F.2d 1027, 1029 n. 2 (4th Cir.1983). Therefore, for the limited purposes of determining jurisdiction, the court has considered the parties' extrinsic evidence.

that Defendant would honor Plaintiff's warranty claim. (Am. Compl. ¶ 26.) Additionally, Plaintiff alleged it paid $3,165.50 to the engineer for product testing and investigation, has incurred $1,000 in transporting and storing the defective product, and has paid $5,000 in professional fees and costs in presenting the warranty claim to Defendant. (*Id.* ¶ 25.) Because there are no allegations of bad faith, Plaintiff's allegations control unless it is a "legal certainty" that Plaintiff cannot recover the jurisdictional amount. *See St. Paul*, 303 U.S. at 289, 58 S.Ct. at 590; *Shanaghan*, 58 F.3d at 112.

Without a complete evaluation of the merits of Plaintiff's claims, which the court is not obligated or even encouraged to do, it is neither a "legal certainty" nor "plain" from the complaint that Plaintiff cannot recover the jurisdictional amount. When a defendant can show the terms of a contract limit the plaintiff's possible recovery, the defendant clearly meets the legal-certainty standard. *See, e.g., Rassa v. Rollins Protective Servs. Co.*, 30 F.Supp.2d 538, 545 (D.Md.1998). Defendant has not made that showing here. The issue in dispute is not whether waiver of the implied warranties or incidental and consequential damages is legally permissible, but whether the parties actually waived those provisions. In order for Defendant to prove lack of subject matter jurisdiction, it must show the billing invoices and statements regarding handling were either part of the original contract or valid modifications to an existing contract. To do so, would require determinations of whether the parties entered into unilateral or bilateral contracts, whether the contracts were formed on the telephone or sometime thereafter, what terms the contracts initially contained, what the parties intended by their conduct, and what significance should be placed on the parties' course of dealing. These answers are not apparent from the factual allegations before the court.

The facts of *Southeastern Adhesives Co. v. Funder America, Inc.*, 89 N.C.App. 438, 366 S.E.2d 505 (1988), appear similar to those alleged by Plaintiff. In *Southeastern*, the defendant buyer made oral purchase orders by telephone from the plaintiff manufacturer. *Id.* at 441, 366 S.E.2d at 507. The manufacturer made no disclaimers of warranty on the telephone. *Id.* The manufacturer shipped the goods to the buyer along with a bill of lading, which included language on the back disclaiming the warranties of merchantability and fitness for a particular purpose. *Id.* at 442, 366 S.E.2d at 507. The North Carolina Court of Appeals held that the parties' course of dealings indicated they intended to form a contract when the buyer called and ordered the products shipped. *Id.* at 442, 366 S.E.2d at 507–08. As a result, the limitations and disclaimers by the manufacturer in the bills of lading were held to be additions to an existing contract under North Carolina General Statutes § 25-2-207(2). *Id.* at 442–43, 366 S.E.2d at 507–08. The court explained that, because the limitations and disclaimers drastically affected the buyer's remedies, they materially altered the contract and, as a result, were legally ineffective. *Id.; see* N.C. Gen.Stat. § 25-2-207.

The *Southeastern* rationale could apply here, depending upon the outcome of discovery and the maturation of the record.[6] Only after resolving the aforementioned issues, and more, however, would the court be able to determine what terms were part

---

**6.** The court offers *Southeastern Adhesives Co. v. Funder America, Inc.*, 89 N.C.App. 438, 366 S.E.2d 505 (1988), merely for illustrative purposes as the court has not yet determined, nor been asked to determine, applicable law.

of the original contract or added by valid modification, and consequently, whether Plaintiff's claims fall short of the jurisdictional amount. Because this determination cannot be made without what would otherwise be a decision on the merits—a decision inappropriate at this time—it is not a legal certainty that Plaintiff cannot recover the jurisdictional amount.

Therefore, because Plaintiff has alleged damages in excess of the amount in controversy required for subject matter jurisdiction, and Defendant has not shown it is a "legal certainty" that Plaintiff cannot recover the jurisdictional amount, the court is satisfied it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Defendant's motion for dismissal under Rule 12(b)(1) will be denied.

### B. Failure to State a Claim Upon Which Relief Can be Granted

Having determined the court has subject matter jurisdiction, the court will next address whether Plaintiff's amended complaint is sufficient to withstand a motion brought under Rule 12(b)(6). The court will consider Plaintiff's claims for: (1) breach of the implied warranty of merchantability; (2) breach of the implied warranty of fitness for a particular purpose; (3) breach of express warranty; (4) indemnity; and (5) unfair and deceptive trade practices.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings, but it does not seek to resolve disputes surrounding the facts. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). A court must determine only if the challenged pleading fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The issue is not whether the defendant will ultimately prevail on its claims, but whether it is entitled to offer evidence to support the claims.

*Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The pleading must be "liberally construed" in the light most favorable to the non-moving party and allegations made therein are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969).

### 1. Breach of the Implied Warranty of Merchantability

In Count One, Plaintiff claims Defendant breached its implied warranty of merchantability by selling Plaintiff defective trim boards that did not pass without objection in the trade under the contract description, were not fit for the ordinary purpose for which the product is used, and did not run of even kind, quality, and quantity within each unit and among all units involved. (Am.Compl.¶¶ 31–38.)

A warranty of merchantability is implied in every sale of goods if the seller is a merchant of the kind of goods sold. N.C. Gen.Stat. § 25–2–314; Va.Code Ann. § 8.2–314. To prove a breach of the implied warranty of merchantability, the buyer must prove: (1) "the goods bought and sold were subject to an implied warranty of merchantability"; (2) "the goods did not comply with the warranty in that the goods were defective at the time of sale"; (3) the alleging party's "injury was due to the defective nature of the goods"; and (4) "damages were suffered as a result." *Cockerham v. Ward*, 44 N.C.App. 615, 624–25, 262 S.E.2d 651, 658 (1980). To be merchantable, goods must at least:

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, [be] of fair average quality within the description; and

(c) [be] fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) [be] adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

N.C. Gen.Stat. § 25–2–314; Va.Code Ann. § 8.2–314.

■ Here, Plaintiff has pleaded facts supporting each element of its claim for breach of the implied warranty of merchantability. Plaintiff alleges it purchased the trim boards from Defendant, a merchant of lumber products, and Defendant did not exclude or modify the implied warrant of merchantability at the time of sale. (Am.Compl.¶¶ 17–19, 30, 35.) Plaintiff further alleges it did not alter, modify, or damage the trim boards prior to resale. (*Id.* ¶ 18.) After installation of the trim boards by Bowness on several residential structures, the boards separated at the finger joints. The separation occurred because of improper or insufficient application of glue or adhesives to the finger joints. (*Id.* ¶¶ 18–20.) The defects were not visible until after installation, and the trim boards required removal and replacement damaging Plaintiff in excess of $150,000. (*Id.* ¶¶ 25–26.)

Count One, therefore, sufficiently states a claim for breach of implied warranty of merchantability. Defendant's motion to dismiss will be denied as to Count One.

### 2. Breach of the Implied Warranty of Fitness for a Particular Purpose

In Count Two, Plaintiff claims Defendant breached its implied warranty of fitness for a particular purpose, i.e., that the trim boards were fit for installation on residential homes, by selling Plaintiff defective trim boards. (Am.Compl.¶¶ 39–45.)

■ A warranty of fitness for a particular purpose is implied in contracts for the sale of goods if the seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." N.C. Gen.Stat. § 25–2–315; Va.Code Ann. § 8.2–315. To establish a breach of the implied warranty of fitness for a particular purpose, a buyer must prove: (1) "the seller had reason to know the particular purpose for which the buyer required the goods"; (2) "the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish appropriate goods"; and (3) "the buyer in fact relied upon the seller's skill or judgment." *Medcom, Inc. v. C. Arthur Weaver Co.*, 232 Va. 80, 348 S.E.2d 243, 246 (1986).

■ Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose fails for two reasons. First, Plaintiff has failed to plead its claim. Although the pleading requirements in federal courts are modest, *see* Fed.R.Civ.P. 8(a), a pleader must allege facts, directly or indirectly, supporting each element of its claim. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 201–02 (4th Cir.2002); *Iconbazaar, L.L.C. v. America Online, Inc.*, 308 F.Supp.2d 630, 635 (M.D.N.C.2004). Here, Plaintiff's direct, factual allegations establish only Plaintiff's reliance on Defendant's judgment. (*See* Am. Compl. ¶ 41.) Noticeably absent are any direct allegations

Defendant knew of the particular purpose Plaintiff had for the trim boards or that Plaintiff was relying on Defendant's skill or judgment to furnish appropriate goods. Although knowledge of Plaintiff's intended purpose for the goods can be implied by the relationship of the parties and their respective businesses, Defendant's knowledge of Plaintiff's reliance cannot. Because Plaintiff is in the business of selling building products and Defendant is a wholesale distributor of those products, it is difficult to infer the kind of disparate knowledge of the goods at issue that is typically associated with the implied warranty of fitness for a particular purpose. There are no allegations Defendant had any more intimate knowledge of trim boards than Plaintiff from which the court can infer Defendant knew Plaintiff was relying on its skill or judgment. As a result, Plaintiff has failed to properly plead this claim.

■ Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose also fails as a matter of law. Official comment 2 to the statutes creating the implied warranty of fitness for a particular purpose distinguish it from the implied warranty of merchantability:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

N.C. Gen.Stat. 25–2–315 cmt. 2; Va.Code Ann. § 8.2–315 cmt. 2. Ordinary use of a product forecloses recovery under the implied warranty of fitness for a particular purpose. *See, e.g., Lescs v. Dow Chem. Co.,* 976 F.Supp. 393, 400–01 (W.D.Va. 1997) (denying claim under Virginia law where a residential insecticide was applied by an exterminator to plaintiff's residence); *Foyle By and Through McMillan v. Lederle Labs.,* 674 F.Supp. 530, 535 (E.D.N.C.1987) (denying claim under North Carolina law where plaintiff used a vaccine for its intended purpose of preventing the contraction of a disease).

In this case, Plaintiff's intended use of the trim boards was the trim boards' ordinary use. Plaintiff alleges the trim boards were not fit for the particular purpose— for installation on residential housing— "for which [they were] manufactured, designed, and sold." (Am.Compl.¶ 42.) The fact that the trim boards were manufactured, designed, and sold for residential use makes Plaintiff's actual use ordinary. Furthermore, there is nothing peculiar about the use of the trim boards (building materials), where Plaintiff, a seller of building materials, purchased the trim boards from Defendant wholesaler for subsequent sale and installation on residential homes. Such ordinary, intended use prevents recovery under the implied warranty of fitness for a particular purpose as a matter of law. *Halprin v. Ford Motor Co.,* 107 N.C.App. 423, 431, 420 S.E.2d 686, 691 (1992) (denying claim where a plaintiff used his truck only for general everyday purposes).

Count Two, therefore, fails to state a claim for breach of the implied warranty of fitness for a particular purpose. Defendant's motion to dismiss will be granted as to Count Two.

### 3. Breach of Express Warranty

In Count Three, Plaintiff claims Defendant breached its express warranties that

the trim boards were fit for use on residential homes, were merchantable, and could be resold by Plaintiff in the ordinary course of its business, by selling Plaintiff defective trim boards. (Am.Compl.¶¶ 46–51.)

██ An express warranty is created when, as to the goods being sold, a seller makes "any affirmation of fact or promise," provides "any description," or furnishes "any sample or model," and such affirmation, description, or sample becomes part of the parties' contract. N.C. Gen.Stat. § 25–2–313; Va.Code Ann. § 8.2–313. To establish a claim for breach of an express warranty, a claimant must prove that an express warranty existed upon which it relied in making purchases and that the seller breached said warranty. *See, e.g., Hall v. T.L. Kemp Jewelry, Inc.,* 71 N.C.App. 101, 104, 322 S.E.2d 7, 10 (1984).

██ Taken in the light most favorable to Plaintiff, Plaintiff states a claim for breach of express warranty. Plaintiff alleges Defendant's agents, employees, and representatives made certain affirmations of fact regarding the condition, fitness, and use of the trim boards. (Am.Compl.¶ 47.) The pleading contains numerous factual allegations that the trim boards did not live up to Defendant's representations. The court can infer, from the nature of Plaintiff's business, the parties' relationship, and from allegations in the pleadings that Plaintiff relied on these representations when it purchased the trim boards.

Count Three, therefore, sufficiently states a claim for breach of express warranty. Defendant's motion to dismiss will be denied as to Count Three.

### 4. Indemnity

In Count Four, Plaintiff claims indemnity against Defendant to the extent Plaintiff has been required to pay claims to customers as a result of the defective trim boards. (Am.Compl.¶¶ 52–54.) Defendant argues Plaintiff's claim for indemnification should be dismissed because Plaintiff only brings a claim for implied-in-law indemnity and its allegations fail to state a claim upon which relief can be granted.

██ The court sees no reason to so narrowly construe Plaintiff's factual allegations. Indemnity exists "whenever one party is exposed to liability by the action of another who, in law or equity, should make good the loss of the other." *McDonald v. Scarboro,* 91 N.C.App. 13, 22, 370 S.E.2d 680, 686 (1988). The right to indemnity may be based on an express contract, a contract implied-in-fact, or a contract implied-in-law. *Northeast Solite Corp. v. Unicon Concrete, LLC,* 102 F.Supp.2d 637, 640 (M.D.N.C.1999). Because Plaintiff has not alleged an express contract of indemnity, it cannot recover under that theory of law.

██ Implied-in-fact indemnity arises when a claimant establishes special circumstances, such as words or conduct, from which a court could find a binding contract that fairly implies the right of indemnity. *TransDulles Ctr., Inc. v. USX Corp.,* 976 F.2d 219, 228 (4th Cir.1992). Here, Plaintiff alleges Defendant had honored prior warranty claims of Plaintiff when other products were defective. (Am. Compl.¶ 20.) When Plaintiff notified Defendant of the trim board failure, Defendant gave Plaintiff assurances that it would honor any warranty claims for the trim boards if the trim boards were determined defective. (*Id.* ¶ 22.) Considering the relationship of the parties, the history of honoring warranty claims, and the alleged assurances by Defendant, Plaintiff has sufficiently stated a claim for implied-in-fact indemnity. *See McDonald,* 91 N.C.App. at 22, 370 S.E.2d at 686 (finding

sufficient evidence of implied-in-fact indemnity based upon oral assurances of the defendant that he would provide the plaintiff an attorney if sued).

■ Implied-in-law indemnity is created for reasons of justice "when there is a great disparity in the fault of two tortfeasors and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other." *International Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F.2d 124, 127 (4th Cir.1988). North Carolina courts have created implied-in-law indemnity in certain breach of warranty cases:

> Where the retailer purchases personal property from the manufacturer or wholesaler for resale with implied or express warranty of fitness and the retailer resells to the consumer *with the same warranty* and the retailer has been compelled to pay for breach of warranty, he may recover his entire loss from the manufacturer.

*Wilson v. E–Z Flo Chem. Co.*, 281 N.C. 506, 512, 189 S.E.2d 221, 225 (1972) (citing *Perfecting Serv. Co. v. Product Dev. & Sales Co.*, 261 N.C. 660, 668, 136 S.E.2d 56, 63 (1964) and N.C. Gen.Stat. §§ 25–2–314 to –315) (emphasis added).

Defendant is partially correct in its argument that Plaintiff has failed to pass along to its buyers the same warranties Plaintiff received from Defendant. (Br. Support Def.'s Mot. Dismiss or, Alternative, Summ. J. at 14.) As for express warranties, the amended complaint is devoid of any allegations Plaintiff resold the trim boards to Bowness with the same express warranties Plaintiff received from Defendant. Defendant is incorrect as to the implied warranties. The warranties of merchantability and fitness for a particular purpose are to be implied into sales contracts where the statutory conditions are met. *See* N.C. Gen.Stat. §§ 25–2–314 to – 315; Va.Code Ann. §§ 8.2–314 to –315. As a result, a retailer need not allege it passed along an implied warranty to customers in order to state a claim for implied-in-law indemnity against a wholesaler or manufacturer, so long as the facts alleged do not disclose that the retailer excluded the warranties when it resold the products or the resale otherwise did not meet the statutory conditions. Here, it is clear that Plaintiff is a merchant of construction materials. The amended complaint does not allege Plaintiff excluded the implied warranty of merchantability when it resold the trim boards to Bowness. Therefore, Plaintiff has stated a valid claim for implied-in-law indemnity under North Carolina law based on the implied warranty of merchantability. Because the court has already determined that the implied warranty of fitness for a particular purpose is inapplicable as a matter of law, Plaintiff cannot claim indemnity under the theory of implied warranty for a particular purpose.

Count Four, therefore, sufficiently states a claim for implied-in-fact indemnity and implied-in-law indemnity for passing on the implied warranty of merchantability.[7] Defendant's motion to dismiss will be denied as to Count Four.

---

7. If Plaintiff ultimately prevails on its express warranty or implied warranty of merchantability claim, it may collect only limited indemnity from Defendant. First, Plaintiff's recovery would be limited by any valid contractual limitation of remedy. Second, indemnity does not cover payments to a third person for which the indemnitee is not liable or which were paid improperly. *Northwestern Mut. Ins. Co. v. Hylton*, 7 N.C.App. 244, 250, 172 S.E.2d 226, 229 (1970). Plaintiff's recovery of indemnification is therefore also limited to those damages recoverable for breach of the applicable warranty. *See* N.C. Gen.Stat. § 25–2–714 to –715; Va.Code Ann. § 8.2–714 to –715.

### 5. Unfair and Deceptive Trade Practices

In Count Five, Plaintiff alleges Defendant's willful and unjustified refusal to honor its warranty obligations after having originally agreed to honor them constitutes an unfair and deceptive trade practice under § 75–1.1. (Am.Compl.¶¶ 55–62.) Defendant argues Plaintiff's claim for unfair and deceptive trade practices should be dismissed because failure to honor warranty obligations is a mere breach of warranty that, even if intentional, is not a violation of § 75–1.1. (Br. Support Def.'s Mot. Dismiss or, Alternative, Summ. J. at 15–16.) Plaintiff responds that it alleges more than a mere breach of warranty, relying on *Barbee v. Atlantic Marine Sales & Service, Inc.*, 115 N.C.App. 641, 446 S.E.2d 117 (1994). (Pl.'s Br. Opp'n Def.'s Mot. Dismiss and Mot. Summ. J. at 16–17.)

North Carolina statutes declare unlawful "unfair and deceptive acts or practices in or affecting commerce." N.C. Gen.Stat. § 75–1.1. To state a claim for unfair and deceptive trade practices, a plaintiff must show: (1) the defendant committed "an unfair or deceptive act or practice, or an unfair method of competition"; (2) "in or affecting commerce"; (3) "which proximately caused actual injury to the plaintiff." *Furr v. Fonville Morisey Realty, Inc.*, 130 N.C.App. 541, 551, 503 S.E.2d 401, 408 (1998) (quoting *Spartan Leasing v. Pollard*, 101 N.C.App. 450, 460–61, 400 S.E.2d 476, 482 (1991)). Thus, the statute provides two independent grounds for liability, unfair acts and deceptive acts. A practice is unfair if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Phoenix Mut. Insurance Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), *overruled on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). The test for deceptiveness is whether the act "possesse[s] the tendency or capacity to mislead, or create[s] the likelihood of deception." *Compton v. Kirby*, 157 N.C.App. 1, 20, 577 S.E.2d 905, 917 (2003). "Unfairness" is a broader concept than, and includes the concept of, "deception." *Johnson*, 300 N.C. at 263, 266 S.E.2d at 621.

Whether a practice or act is unfair or deceptive is a question of law for the court. *Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). It is clear, however, that like a breach of contract, a mere breach of warranty does not constitute an unfair or deceptive trade practice. *See Anders v. Hyundai Motor Am. Corp.*, 104 N.C.App. 61, 407 S.E.2d 618 (1991) (breach of warranty); *Branch Banking and Trust Co. v. Thompson*, 107 N.C.App. 53, 62, 418 S.E.2d 694, 700 (1992) (breach of contract). Instead, a breach must be particularly egregious to permit recovery under § 75–1.1. *South Atlantic Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 536 (4th Cir. 2002).

Sufficiently egregious circumstances were found in *Barbee*, where the North Carolina Court of Appeals recognized that a bad faith refusal to honor a warranty constituted an unfair and deceptive trade practice. 115 N.C.App. at 647–48, 446 S.E.2d at 121. There, plaintiff consumers purchased an allegedly defective boat that allowed in an excessive amount of water that could not be drained effectively. *Id.* at 644, 446 S.E.2d at 119. Plaintiffs immediately notified the defendant retailer of the problem, which in turn notified the defendant manufacturer. The manufacturer suggested several solutions to the problem, but none were successful. *Id.* at 644–45, 446 S.E.2d at 119. The manufacturer finally sent a representative to examine the boat and assess the problem.

During the visit, the manufacturer's representative observed that the boat was being used commercially as a charter boat. Based upon the commercial use, the manufacturer refused to do anything further for the plaintiffs, insisting commercial use was excepted from the warranty. *Id.* at 645, 446 S.E.2d at 120. The manufacturer offered no concessions, but merely suggested plaintiffs trade the boat in for a new or different model. *Id.* At trial, while the evidence showed the written warranty explicitly excluded from coverage boats used commercially, the warranty only applied to boats manufactured two years after the manufacturer sold the boat to the retailer. *Id.* at 648, 446 S.E.2d at 121. The Court of Appeals upheld liability under § 75–1.1 stating the evidence was sufficient for the jury to conclude "once the defendant [manufacturer] realized that the problem with plaintiffs' boat could not be remedied, it seized upon the commercial use exclusion in a bad faith attempt to avoid responsibility for the defective boat." *Id.*

▮▮▮ In this case, Plaintiff's allegations closely resemble, but are more egregious than, those in *Barbee*. Plaintiff alleges that, once it found out about the failures of the trim boards, it notified Defendant of the problems and provided Defendant with a copy of Plaintiff's expert's report setting out the specific failures. (Am.Compl.¶¶ 24, 56.) Defendant, in turn, did not deny the product was defective or the report was accurate, but instead assured Plaintiff the warranty would be honored. (*Id.* ¶¶ 21, 26–27, 57.) It was only after Defendant was given the estimate by Bowness of the cost of repair and replacement that Defendant asserted Plaintiff had waived any implied or express warranties. (*Id.* ¶¶ 27, 57.) At that point, Plaintiff had already relied upon Defendant's promises and assurances and had agreed to compensate Bowness for the cost of repairs. (*Id.*

¶¶ 26, 57.) Thus, Plaintiff alleges a similar bad-faith denial of the warranty as found in *Barbee*, which, if true, would constitute an unfair trade practice. Plaintiff also alleges facts such as Defendant's misrepresentations that it would honor the warranty, which could have a tendency to deceive.

Count Five, therefore, sufficiently states a claim for unfair and deceptive trade practices under § 75–1.1. Defendant's motion to dismiss will be denied as to Count Five.

## IV. CONCLUSION

For the reasons stated herein,

IT IS ORDERED that Defendant's Second Motion to Dismiss or, in the Alternative, for Summary Judgment [19], which the court treats as a motion to dismiss, is granted in part and denied in part. The motion to dismiss is granted as to Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose (Count Two). The motion is denied as to Plaintiff's claims for breach of the implied warranty of merchantability (Count One), breach of express warranties (Count Three), indemnity (Count Four), and unfair and deceptive trade practices (Count Five). Furthermore, the court finds it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [6] and Plaintiff's Motion to Allow Discovery Prior to Ruling on Defendant's Dispositive Motions [8] are rendered moot.