Milford District Court
No. 2002-413

RACHEL COMEAU

v.

JERRY VERGATO

Argued: April 10, 2003
Opinion Issued: May 16, 2003

*Bolton Law Offices, P.A.*, of Nashua (*Steven A. Bolton* on the brief and orally), for the plaintiff.

*Shaheen & Gordon, P.A.*, of Concord (*Arpiar G. Saunders, Jr.* and *Eric A. Gentes* on the brief, and *Mr. Saunders* orally), for the defendant.

DUGGAN, J. The defendant, Jerry Vergato, appeals a ruling of the Milford District Court (*Ryan,* J.) ordering him to pay damages for violating RSA 540-A:3 (Supp. 2002) by entering a camper owned by the plaintiff, Rachel Comeau, and taking her property. The defendant argues that he and the plaintiff did not have a landlord-tenant relationship as

defined in RSA 540-A:1 (1997). He also argues that the statute governing campgrounds, RSA ch. 216-I (2000 & Supp. 2002), supersedes RSA 540-A:3. We reverse and remand.

In its temporary order and order on the motion for reconsideration, the trial court found the following facts. The defendant is a campground owner who rents spaces, equipped with utilities, to campers on a year-round basis. The plaintiff rented space and lived on the defendant's property from March 2001 through January 2002. The court described the plaintiff's living unit as both a "camper" and a "trailer."

On February 3, 2002, allegedly because the plaintiff owed back rent, the defendant's son, Stephen Vergato, and an employee entered the plaintiff's camper and removed some of the plaintiff's property. Stephen Vergato also placed a "For Sale" sign on the plaintiff's camper.

On February 20, 2002, the plaintiff filed a petition with the district court requesting the return of her property and damages. She argued that the defendant was a "landlord" under RSA 540-A:1, and thus subject to RSA 540-A:3, III (Supp. 2002), which prohibits a landlord from "willfully seiz[ing], hold[ing] or otherwise directly or indirectly deny[ing] a tenant access to and possession of such tenant's property, other than by proper judicial process." The court agreed that the defendant had violated RSA 540-A:3, and issued a temporary order directing the defendant to return the plaintiff's property. It later awarded the plaintiff damages of $1,000 for each day the defendant failed to return the plaintiff's property, assessing a total award of $23,000 plus costs. See RSA 540-A:4, IX (1997); RSA 358-A:10, I (1995).

The defendant filed a motion for reconsideration, arguing that the plaintiff was not a tenant and he was not a landlord under RSA 540-A:1. He also argued that RSA chapter 216-I, which governs recreational campgrounds and camping grounds, preempts application of RSA 540-A:3. The court replied:

> While it may have been the stated intention of the defendant to have people rent spaces at his campground on a temporary basis and only for recreational purposes, the reality is that he knowingly allowed people, the plaintiff included, to live in their campers on a year round basis. [RSA 540-A:1, I] defines "Landlord" as meaning "an owner, lessor or agent thereof who rents or leases residential premises ... to another person." ... No definition is given to the word "residential" in the statute. Webster's New Collegiate Dictionary [defines residence] as "the act or fact of dwelling in a place for some time." The plaintiff lived at the campground from March of 2001 to February of 2002. ...

> Living at the same place for 11 months is not a temporary situation. Certainly the plaintiff was not living at the campground for 11 months including the winter months, for recreational purposes.

The court thus affirmed its finding that there was a landlord-tenant relationship, and denied the motion for reconsideration. On appeal, the defendant raises the same issues in this court.

We note at the outset that we do not have a transcript of the district court proceedings. The moving party has the burden of providing an adequate record. *See Rix v. Kinderworks Corp.*, 136 N.H. 548, 553 (1992). "Because the defendant[] failed to provide this court with a record and transcript of the hearing, we assume that the evidence was sufficient to support the result reached by the trial court. Accordingly, we review the court's order for errors of law only." *Atwood v. Owens*, 142 N.H. 396, 396 (1997).

The defendant first argues that he was not a "landlord" under RSA 540-A:1. The statute reads:

> I. "Landlord" means an owner, lessor or agent thereof who rents or leases residential premises including manufactured housing or space in a manufactured housing park to another person.

> II. "Tenant" means a person to whom a landlord rents or leases residential premises, including manufactured housing or a space in a manufactured housing park.

> III. "Premises" means the part of the landlord's property to which the tenant is entitled exclusive access for living or storage as a result of the rental or lease agreement.

To determine whether the defendant was a landlord, we must decide whether the plaintiff's premises were "residential" within the meaning of the statute. "In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Amerigas Propane*, 146 N.H. 267, 269 (2001). Although we look to the plain and ordinary meaning of the statutory language in determining legislative intent, we will not read words or phrases in isolation, but in the context of the entire statute. *See id.*

The trial court's analysis focused exclusively on the word "residential" and applied a dictionary definition of "residence" to determine legislative intent. This definition — "the act or fact of dwelling in a place for some time" — involves only the duration of the presumed tenancy, and does not

consider the physical attributes of the premises. For example, under the trial court's definition, a renter could establish a landlord-tenant relationship merely by paying a fee to pitch a tent on undeveloped land, and living there for a certain period of time.

Read as a whole, the statute does not support the trial court's construction. Specifically, the trial court overlooked the last clause of the definition for both "landlord" and "tenant," which states that "residential premises" includes "manufactured housing or space in a manufactured housing park." RSA 540-A:1. The inclusion of this phrase indicates that the legislature considered the form of the housing relevant in determining whether it is "residential." If the legislature intended the *duration* of the stay to be sufficient to establish a residence, it would be superfluous to include a specific *form* of housing within the ambit of the statute. *See Pennelli v. Town of Pelham*, 148 N.H. 365, 367-68 (2002) ("the legislature is presumed not to have used superfluous or redundant words"). Thus, the mere fact that the plaintiff lived on the defendant's property for a certain length of time did not establish a landlord-tenant relationship, and the trial court erred as a matter of law in ruling otherwise. *See Atwood*, 142 N.H. at 397, 399 (holding that RSA chapter 540-A does not apply if "the primary purpose for renting the structure is commercial," even if renter actually lives on the property).

Moreover, the definitions of both "landlord" and "tenant" specifically mention only one type of residential premises — manufactured housing. *See* RSA 540-A:1. We believe it unlikely that the legislature intended "manufactured housing" to be just one of many examples of trailer and camper units encompassed within "residential premises." Elsewhere in the statutes, the legislature describes "manufactured housing" in exclusive terms, defining "manufactured housing" not to embrace "campers" and "recreational vehicles." *See* RSA 205-A:1 (2000). Surely, if the legislature had intended campers and trailers to be residential premises, it would not have included as the sole example a type of residence that specifically excludes campers and trailers from its ambit.

■ We therefore conclude that the legislature intended the inclusion of "manufactured housing" within the definition of "residential premises" to be exclusive of other forms of campers and trailers. The defendant, thus, could not have been a "landlord" unless the plaintiff's camper or trailer constituted "manufactured housing."

■ Although "manufactured housing" is not defined within RSA chapter 540-A, the legislature did provide a comprehensive definition within RSA chapter 205-A (2000 & Supp. 2002), concerning the regulation of manufactured housing parks. This definition applies "solely in [RSA

chapter 205-A] unless the context specifically requires otherwise." RSA 205-A:1 (2000). Because RSA chapter 205-A and RSA chapter 540-A share the purpose of establishing the rights of tenants living in manufactured homes, it is clear that the legislature intended RSA chapter 540-A to share RSA chapter 205-A's definition of "manufactured housing." In fact, the legislature amended RSA chapter 540-A to mirror the use of the term "manufactured housing" in RSA 205-A:1. *Compare* Laws 1983, 230:10, :18 (replacing statutory references to "mobile home" in RSA chapter 205-A with "manufactured housing") *with* Laws 1979, 305:1 *and* Laws 1985, 100:6 (revising RSA 540-A:1 to refer to "manufactured housing" instead of a "mobile home"); *see also* RSA 540-A:1, Revision note (stating that "manufactured housing" and "manufactured housing park" were substituted in RSA 540-A:1 "for purposes of conformity with RSA 205-A").

RSA 205-A:1 reads:

I. "Manufactured housing" includes, but is not limited to, manufactured housing as defined by RSA 674:31, and also includes any prefabricated dwelling unit which:

(a) Is designed for long term and continuous residential occupancy;

(b) Is designed to be moved on wheels, as a whole or in sections; and

(c) On arrival on the site, is complete and ready for occupancy, except for incidental unpacking, assembly, connection with utilities, and placing on support or permanent structure.

Nothing herein shall be construed to include campers or recreational vehicles within the definition of "manufactured housing."

RSA 674:31 (1996) further provides that

"manufactured housing" means any structure, transportable in one or more sections, which, in the traveling mode, is 8 body feet or more in width and 40 body feet or more in length, or when erected on site, is 320 square feet or more, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to required utilities, which include plumbing, heating, and electrical heating systems contained therein . . . .

■ Because the trial court erroneously limited its analysis of the landlord-tenant relationship to the duration of the plaintiff's stay, the court

did not reach the issue of whether the plaintiff's housing met either statutory definition of manufactured housing. In addition, because we lack a record, and because the trial court's opinion is silent on the size and design of the plaintiff's living unit, we are unable to determine whether it met either of these definitions. We do not consider the trial court's description of the unit as a "camper," a unit specifically excluded from the definition of manufactured housing, to be dispositive because the trial court also referred to the unit as a "trailer," and did not in any case seem to be aware of the legal definition or effect of its description. *See* RSA 205-A:1. Therefore, we remand the issue of whether the plaintiff's unit qualified as "manufactured housing" to the trial court.

We turn to the defendant's second issue. The defendant argues that RSA chapter 216-I is the exclusive statute governing the relations between campers and campground owners. Thus, even if the defendant were a "landlord" under RSA 540-A:1, he argues that the provisions of RSA chapter 216-I would preempt landlord-tenant protections. RSA chapter 216-I allows campground owners more leeway in evicting campers than RSA chapter 540 permits landlords. For example, the owner of a "recreational campground" may remove a camper "in violation of this chapter" without judicial process merely by "notifying such person that the establishment no longer desires to entertain him and requesting that he immediately leave." RSA 216-I:6, I (2000).

Assuming without deciding that RSA chapter 216-I would preempt any protection the plaintiff could be entitled to under RSA chapter 540-A, the question is whether the premises rented to the plaintiff were in a "recreational campground." The statute defines a "recreational campground or camping park" as "a parcel of land on which 2 or more campsites are occupied or are intended for temporary occupancy for recreational dwelling purposes only, and not for permanent year-round residency." RSA 216-I:1, VII (Supp. 2002). The trial court found that the defendant, whatever his "stated intention," "knowingly allowed people, the plaintiff included" to live year-round on his property for non-temporary and non-recreational purposes. On these facts, we find no legal error in the trial court's refusal to apply RSA chapter 216-I to this case.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.