TAMITHA SHEPARD, BEATRICE PERRY, WILLIAM GMOSER, AND DEBRA ROSSETER, PLAINTIFFS v. BONITA VISTA PROPERTIES, L.P.; VICKIE L. SAFELY-SMITH, AS GENERAL PARTNER OF BONITA VISTA PROPERTIES, L.P.; VICKIE L. SAFELY-SMITH, TRUSTEE OF FVS TRUST, GENERAL PARTNER OF BONITA VISTA PROPERTIES, L.P.; AND, VICKIE L. SAFELY-SMITH, INDIVIDUALLY, DEFENDANTS

No. COA07-1095

(Filed 5 August 2008)

## 1. Appeal and Error— appellate rules violations—dismissal not required

The Court of Appeals denied plaintiffs' motion to dismiss defendants' appeal based on alleged violations of N.C. R. App. P. 28(b) because: (1) our Supreme Court has held that a party's failure to comply with a nonjurisdictional rule of appellate procedure, such as Rule 28(b), normally should not lead to dismissal of the appeal; and (2) to the extent defendants failed to comply with Rule 28(b), their noncompliance does not approach the level of a substantial failure or gross violation, and thus the court was not authorized to consider any sanction.

## 2. Utilities— campground furnishing electricity—public utility—overcharges

An RV campground owner was operating a public utility, and the trial court properly awarded damages to former tenants of the campground under the Public Utilities Act, where: (1) the owner charged the tenants more than the actual cost of electricity supplied to the campground by a power company; and (2) the owner's argument that the overcharges for electricity were not "willful" because the owner was ignorant of the proper way to calculate electricity charges was without merit. N.C.G.S. § 62-3(23)(h).

## 3. Unfair Trade Practices— treble damages—rental of campground spaces—disconnecting electricity—damage to RVs

The trial court did not err by awarding treble damages on plaintiffs' unfair and deceptive trade practices (UDTP) claims for damages to their RVs when defendant RV campground owner disconnected electrical service to the RVs, regardless of whether plaintiffs were residential tenants entitled to the protections of Chapter 42, because: (1) plaintiffs' UDTP claims were not dependent on proving violations of Chapter 42 and the evidence

supported their UDTP claims irrespective of any Chapter 42 violations; (2) the trial court's findings of fact supported its conclusions when defendant rented campground spaces to plaintiffs on a monthly basis and charged plaintiffs for electricity, these activities constituted business activities, defendant's acts were in or affecting commerce, and defendant's acts in interfering with and disconnecting plaintiffs' electricity were unfair at a minimum; and (3) plaintiffs' expert evidence showed the electrical interruptions caused damage to plaintiffs' RVs.

**4. Costs; Unfair Trade Practices— attorney fees— reasonableness**

Although the trial court did not abuse its discretion in an unfair and deceptive trade practices case by awarding attorney fees under N.C.G.S. § 75-16.1, the case is remanded for a determination of the reasonableness of the award because: (1) in order for the Court of Appeals to determine whether an award is reasonable, the record on appeal must contain findings of fact that support the award including findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney; and (2) the Court of Appeals was unable to determine from the trial court's findings whether the amount of the award was reasonable when the findings did not fully address the skill required to perform the legal services that were rendered or the experience and ability of plaintiffs' trial counsel. On remand, the trial court may include fees for services rendered at all stages of the litigation, including the appeal.

**5. Contracts— breach of contract—compensatory damages— extra hours worked**

The trial court did not err in a breach of contract case by concluding that plaintiff Rosseter was entitled to compensatory damages for the extra hours she worked as office manager for defendant's RV campground because: (1) the trial court's findings of fact established that the parties assented to the same thing in the same sense including that defendant agreed to pay Rosseter $6.00 for each hour Rosseter worked after eighty-six hours per month, and Rosseter initially accepted this compensation in the form of credits against her electricity charges and lot rental; (2) having been forced out of the campground by defendants' disruption of her electrical service, Rosseter was no longer able to accept her due compensation in this form; and (3) by the express terms of

the agreement, Rosseter was entitled to monetary compensation for hours worked for which she has not been compensated.

Judge TYSON concurring in part and dissenting in part.

Appeal by Defendants from judgment entered 5 April 2007 by Judge William C. McIlwain in Scotland County District Court. Heard in the Court of Appeals 5 March 2008.

*Kurtz and Blum, PLLC, by Timothy E. Wipperman, for Plaintiffs-Appellees.*

*Van Camp, Meacham & Newman, PLLC, by Evelyn Mackrella Savage, for Defendants-Appellants.*

STEPHENS, Judge.

Defendants appeal from the district court's judgment awarding $46,210.37 in damages and attorney's fees to Plaintiffs on claims of breach of North Carolina's Public Utilities Act, unfair and deceptive trade practices, and breach of contract. We affirm the awards of damages but remand for additional findings of fact concerning the award of attorney's fees.

When the trial court sits without a jury, as it did in this case, "the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) (citation omitted). The trial court's conclusions of law are reviewed *de novo*. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E.2d 189 (1980). In this case, Defendants did not assign error to any of the trial court's findings, and, thus, the findings are presumed to be supported by competent evidence. *Koufman v. Koufman*, 330 N.C. 93, 408 S.E.2d 729 (1991); N.C. R. App. P. 10(a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ."). The findings establish the facts which follow.

In 2002, Defendant Vickie L. Safely-Smith, "as General Partner, and as Trustee of [Defendant] FVS Trust[,]" formed Defendant Bonita Vista Properties, L.P., in California. In October 2004, Bonita Vista acquired ownership of the Pine Lake RV Resort ("campground") located in Scotland County, North Carolina. Among other services, the campground rented spaces on which recreational vehicle ("RV")

operators could park and live in their RVs. The RV spaces were available to, among others, "monthly tenants." The campground also furnished electrical service to RV operators requiring such service, charging the operators "at the rate of .0971 per kilowatt hour." The campground received its electrical service from the Lumbee River Electric Membership Corporation ("Lumbee River EMC"). Lumbee River EMC charged the campground ".0858 per kilowatt hour for the first 800 hours of use and .0689 per kilowatt hour for the next 4200 hours of use." Safely-Smith was the campground's property manager.

On 3 May 2003, Plaintiffs William GMoser and Debra Rosseter, a married couple, "moved into [the campground,]" and lived there continuously through the time Bonita Vista became the campground's owner. The couple maintained "a single 40.5' by 9.5' RV mobile home" at the campground as their permanent and sole residence, paying $245.00 per month to Bonita Vista in "lot rent." Rosseter and GMoser plugged their RV into one of the campground's power sources and paid for electricity. When they moved in, Rosseter and GMoser gave Bonita Vista $30.00 as a deposit for two "gate openers[.]" Bonita Vista agreed to return the deposit if the openers were returned in working condition. Rosseter and GMoser told Safely-Smith that they intended to remain at the campground indefinitely.

Plaintiff Beatrice Perry "moved into [the campground]" on 23 October 2004. Perry lived in a "fifth-wheel" RV, a "trailer" which "require[s] a large pick-up truck to move or haul it." Perry's RV was her permanent and sole residence. Like Rosseter and GMoser, Perry paid Bonita Vista $245.00 per month as "lot rent[,]" plugged her RV into one of the campground's power sources, and told Safely-Smith that she intended to live at the campground indefinitely. Perry gave Bonita Vista $60.00 as a deposit for three gate openers.

Plaintiff Tamitha Shepard moved into the campground "with her family" on 31 March 2005. Like Perry, Shepard lived in a fifth-wheel RV which was her permanent residence. Like all of the other Plaintiffs, Shepard plugged her RV into one of the campground's power sources and paid a deposit for gate openers. Unlike the others, Shepard required daily use of the campground's bath house because the bathroom in her RV was not functioning properly. Initially, Shepard paid $245.00 in "lot rent[,]" but, on 1 July 2005, Shepard began paying $265.00 per month after she moved her RV to a different space at the campground. Shepard moved primarily due to "the availability of electricity and access to the bath house." Shepard told

Safely-Smith that she intended to live at the campground for one to three years.

All Plaintiffs "availed themselves of utilities and amenities" provided by the campground and received mail at the campground. Also, throughout their tenancies, Plaintiffs used propane from tanks located on the campground's property. Plaintiffs paid for the propane in the tanks at the beginning of their tenancies.

In November 2004, Rosseter began working as the campground's office manager. She agreed to work eighty-six hours per month in exchange for her monthly lot rent. In December 2004, Rosseter worked 102 hours. In 2005, Rosseter worked the following hours: January—80.5; February—166; March—142; April—281.5; May—87.5; June—67. In all, Rosseter worked 324.5 hours more than was required. Rosseter and Safely-Smith had several conversations concerning how Rosseter would be compensated for the extra time. In January 2005, "it was noted that another tenant was being paid [$6.00] per hour" for working at the resort, and Safely-Smith told Rosseter, "and that is what you will be paid." The parties intended that this rate of pay would be applied as a credit for electricity charges and lot rent. For the three months of April, May, and June 2005, Rosseter received a total of $250.01 as electricity credit. Rosseter's employment was terminated on 9 June 2005, but she received lot rental credit of $490.00 for July and August 2005.

Around 1 July 2005, Shepard began to notice that the conditions in the campground's bath house were deteriorating. On 19 August 2005, Shepard expressed her concerns over the bath house's conditions to Perry and Rosseter and then reported the conditions to the Scotland County Health Department. Following an inspection by the Health Department, Safely-Smith became upset and told Shepard that she would "fix" her and that she had to leave the campground.

The Scotland County Sheriff's Department responded to several calls in August 2005 from the campground regarding electricity "issues." On 18 August, Safely-Smith's husband placed a zip-tie on the power box supplying power to Rosseter's RV. On 28 August, Safely-Smith turned off Rosseter's power "at the main power box," and placed a padlock on the "pedestal." On 29 August, Rosseter "plugged into an old 30 amp power source" near her RV. Safely-Smith had Rosseter's power unplugged and had the old power source destroyed. On 30 August, Safely-Smith and an employee "began flipping breakers at the [campground], resulting in the electric power being turned on

SHEPARD v. BONITA VISTA PROPERTIES, L.P.

[191 N.C. App. 614 (2008)]

and off at all [Plaintiffs' RVs]." Each RV was damaged as a result of the electrical service interruptions, and Plaintiffs moved out of the campground that day.

In September 2005, Perry returned Plaintiffs' gate openers to Safely-Smith in good working condition, but Safely-Smith refused to refund Plaintiffs' deposits. Also that month, Plaintiffs contacted Lumbee River EMC and learned that the campground had charged Plaintiffs more for electrical service than Lumbee River EMC charged the campground. On 2 November 2005, Plaintiffs' attorney sent Safely-Smith a letter demanding repayment for the alleged over-charges. Safely-Smith did not respond to the attorney's letter.

Plaintiffs filed a complaint on 17 January 2006. Plaintiffs alleged that Defendants committed unfair and deceptive trade practices, N.C. Gen. Stat. § 75-1.1 (2005), by: (1) interrupting and eventually disconnecting Plaintiffs' electrical service, (2) representing that the campground charged the same rate for electrical service as Lumbee River EMC charged the campground, and (3) refusing to refund Plaintiffs' gate opener deposits. Additionally, Plaintiffs alleged that Defendants' provision of electricity at a rate higher than the rate at which Defendants received the service from Lumbee River EMC constituted a violation of North Carolina's Public Utilities Act. N.C. Gen. Stat. §§ 62-1 to -333 (2005). Plaintiffs also set forth a claim for money owed for the value of the propane which Plaintiffs purchased but which remained in the campground's propane tanks. Finally, Rosseter alleged that Defendants breached their agreement to compensate her for the additional hours she worked as the campground's office manager.

Safely-Smith filed a *pro se* answer on 16 February 2006 and appeared *pro se* at a bench trial conducted between 27-29 June 2006. After Safely-Smith and Plaintiffs' attorney presented their closing arguments, the trial court stated:

> I'm gonna allow [Safely-Smith] . . . to take all of [the evidence] . . . to an attorney . . . then let an attorney research some of this law and file a brief with me about what [she] think[s] the law is and how it applies to [her] case.

Safely-Smith filed a *pro se* brief on 17 July 2006. Plaintiffs filed a motion to strike Defendants' brief on 21 July 2006. On 16 October 2006, the trial court held a hearing and announced its decision in the case.

In its judgment, signed and filed 5 April 2007, the trial court made the following conclusions of law:

1. That [] Rosseter and [] Safely-Smith had an oral agreement for additional compensation concerning hours worked beyond 86 hours per month.

2. . . . Rosseter is entitled to monetary damages for work done and not compensated.

3. That considering all the circumstances of Plaintiffs' tenancies, Plaintiffs were residential tenants who leased living spaces as their primary residences and Plaintiffs are entitled to assert claims under Article 5 and Article 2A of Chapter 42 of [the] North Carolina General Statutes.

4. That as a direct result of [] Safely-Smith's actions in cutting power to Plaintiffs' dwelling units, each Plaintiff suffered direct and consequential damages to their units.

5. That [] Safely-Smith's acts in removing electric power to Plaintiffs who were lawful tenants constitute a retaliatory eviction as set forth in N.C.G.S. 42-37.1—37.3.

6. That in delivering and furnishing electricity to Plaintiffs and charging an amount in excess of the actual cost of the electricity supplied to Plaintiffs, Defendants operated as a public utility as defined by N.C.G.S. 62-3(23).

7. That Defendants willfully charged Plaintiffs a rate for electricity in excess of that prescribed by Lumbee River EMC . . . and Defendants did not refund the same within thirty (30) days after written notice and demand by Plaintiffs' attorney.

8. That pursuant to N.C.G.S. 62-139, Plaintiffs are entitled to receive double the electric overcharges, plus ten dollars ($10.00) per day penalties.

9. That [] Safely-Smith's trespass, her attempts to wrongfully evict Plaintiffs without resort to judicial process and her willfully charging electric rates in excess of that prescribed by the North Carolina Utilities Commission pursuant to G.S. 62-139 constituted unfair or deceptive acts or practices in commerce within the meaning of N.C.G.S. 75-1.1.

10. That pursuant to N.C.G.S. Chapter 75-16, et[] seq., Plaintiffs are entitled to an award of treble damages and attorney fees . . . .

**SHEPARD v. BONITA VISTA PROPERTIES, L.P.**

[191 N.C. App. 614 (2008)]

11. That Plaintiffs . . . are entitled to refunds of their deposits for gate openers returned in working condition . . . .

On Plaintiffs' Public Utilities Act claims, the trial court awarded double damages for the amount of overcharges paid by Plaintiffs. This award amounted to $72.14 for GMoser and Rosseter, $125.96 for Perry, and $59.50 for Shepard. The trial court also ordered Defendants to pay Plaintiffs $10.00 per day for every day between 2 December 2005 and 16 October 2006 as a penalty for the overcharges.[1] This award amounted to $3,180.00 each to GMoser and Rosseter, Perry, and Shepard. On Plaintiffs' unfair and deceptive trade practices claims, the trial court awarded damages in the amounts of $889.79 to Rosseter and GMoser, $1,534.60 to Perry, and $3,223.27 to Shepard, ordered these amounts trebled, and awarded $18,112.50 to Plaintiffs, collectively, in attorney's fees. The damage awards were calculated by totaling the amounts of damage caused to Plaintiffs' RVs as a result of the electrical service interference. On Rosseter's breach of contract claim, the trial court awarded $1,206.99 in uncompensated wages. Finally, the trial court awarded Plaintiffs the amounts they paid Defendants as gate opener deposits. Defendants timely appealed.

## PLAINTIFFS' MOTION TO DISMISS APPEAL

[1] On 4 January 2008, Plaintiffs filed a motion to dismiss Defendants' appeal for alleged violations of Rule 28(b) of the Rules of Appellate Procedure, a rule which "governs the content of the appellant's brief." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 198, 657 S.E.2d 361, 365 (2008). After Plaintiffs filed their motion to dismiss, our Supreme Court announced that a party's failure to comply with a nonjurisdictional rule of appellate procedure, such as Rule 28(b), "normally should not lead to dismissal of the appeal." *Id.* (citations omitted). Had *Dogwood* been announced before Plaintiffs filed their motion, we hazard to suggest that Plaintiffs would not have asked this Court to dismiss Defendants' appeal for the alleged violations. Surely Plaintiffs must agree that, to the extent Defendants failed to comply with Rule 28(b), Defendants' noncompliance does not approach the level of a "substantial failure"

---

1. The Public Utilities Act allows a court to impose a $10.00 per day penalty "for each day's delay" in refunding overcharges "30 days after written notice and demand of the person overcharged[.]" N.C. Gen. Stat. § 62-139(b) (2005). Defendants received Plaintiffs' written notice and demand on 2 November 2005, thirty days before 2 December 2005. The trial court announced its judgment in open court on 16 October 2006.

or "gross violation." *Id.* at 199, 657 S.E.2d at 366 (quotation marks omitted). Regardless, such is our opinion, and we, therefore, are not authorized to consider any sanction. *Dogwood,* 362 N.C. 191, 657 S.E.2d 361. Plaintiffs' motion is denied.

## PUBLIC UTILITIES ACT

**[2]** Defendants argue that the trial court erred in awarding damages pursuant to the Public Utilities Act. That Act provides:

> Any public utility in the State which shall willfully charge a rate for any public utility service in excess of that prescribed by the Commission, and which shall omit to refund the same within 30 days after written notice and demand of the person overcharged, unless relieved by the Commission for good cause shown, shall be liable to him for double the amount of such overcharge, plus a penalty of ten dollars ($10.00) per day for each day's delay after 30 days from such notice or date of denial or relief by the Commission, whichever is later.

N.C. Gen. Stat. § 62-139(b). The Act defines a "public utility" as, among other things, a person or organization

> [p]roducing, generating, transmitting, delivering or furnishing electricity, piped gas, steam or any other like agency for the production of light, heat or power to or for the public for compensation[.]

N.C. Gen. Stat. § 62-3(23)(a)(1) (2005). The Act continues:

> The term "public utility" shall not include the resale of electricity by (i) a campground operated primarily to serve transient occupants, . . . provided that (i) the campground . . . charges no more than the actual cost of the electricity supplied to it, (ii) the amount of electricity used by each campsite . . . occupant is measured by an individual metering device, (iii) the applicable rates are prominently displayed at or near each campsite . . ., and (iv) the campground . . . only resells electricity to campsite . . . occupants.

N.C. Gen. Stat. § 62-3(23)(h) (2005).

Defendants first argue that the trial court erred in concluding that they were operating a "public utility." Defendants do not dispute that they were furnishing electricity to the public for compensation. Rather, Defendants contend that the campground was excluded from

SHEPARD v. BONITA VISTA PROPERTIES, L.P.

[191 N.C. App. 614 (2008)]

the statutory definition because Plaintiffs presented no evidence of: (1) the actual costs Defendants incurred for the electricity supplied to the campground, (2) whether the amount of electricity used by each campsite occupant was measured by an individual metering device, and (3) whether the campground only resold electricity to campsite occupants. For the reasons set forth at the outset of this opinion, our review is limited to whether the trial court's findings of fact support its conclusion.

The trial court found:

85. That [] Safely-Smith charged tenants for the electricity at the rate of .0971 per kilowatt hour.

. . . .

87. That Lumbee River EMC provided electricity to the [campground] as a Phase Three property, charging Defendants .0858 per kilowatt hour for the first 800 hours of use and .0689 per kilowatt hour for the next 4200 hours of use.

These unchallenged findings negate Defendants' contention. A campground furnishing electricity for compensation is excluded from the statutory definition only if it does not charge more than the actual cost of electricity supplied to it. N.C. Gen. Stat. § 62-3(23)(h). Defendants charged more than the actual cost of electricity supplied to the campground by Lumbee River EMC. We note that these findings are supported by evidence in the record on appeal. Defendant's argument is overruled.

Second, Defendants argue that even if they were operating as a public utility, it cannot be said that they "willfully" overcharged Plaintiffs for electricity because "Defendants were ignorant of the proper way to calculate [Plaintiffs'] electricity charges." This argument is meritless and, accordingly, is rejected.

## UNFAIR AND DECEPTIVE TRADE PRACTICES

[3] Next, Defendants argue that the trial court erred in awarding treble damages on Plaintiffs' unfair and deceptive trade practices ("UDTP") claims. In both their appellate brief and their oral argument to this Court, Defendants argued at length that Plaintiffs' UDTP claims were dependent on an assertion that Plaintiffs were residential tenants entitled to the protections of North Carolina's landlord and tenant laws. N.C. Gen. Stat. ch. 42 (2005). Plaintiffs, however, before both the trial court and this Court, asserted that their UDTP claims

were not dependent on proving violations of Chapter 42 and that the evidence supports their UDTP claims irrespective of any Chapter 42 violation. We agree with Plaintiffs.

Section 75-1.1 creates a private cause of action for consumers. *Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 529 S.E.2d 676, *reh'g denied*, 352 N.C. 599, 544 S.E.2d 771 (2000). "The purpose of G.S. 75-1.1 is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State and applies to dealings between buyers and sellers at all levels of commerce." *United Virginia Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 319-20, 339 S.E.2d 90, 93 (1986) (citing *Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119, *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982)). *See* N.C. Gen. Stat. § 75-1.1(b) (2005) (" '[C]ommerce' includes all business activities . . . ."). "Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citation omitted). "In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Id.* at 68, 529 S.E.2d at 681 (citing N.C. Gen. Stat. § 75-1.1(a) (1999); *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998)). A person damaged by another's unfair or deceptive acts or practices is entitled to treble damages. N.C. Gen. Stat. § 75-16 (2005).

As stated above and as the dissent reiterates, our review is limited to whether competent evidence supports the trial court's findings and whether the findings support the court's conclusions of law. *Shear*, 107 N.C. App. 154, 418 S.E.2d 841. In its fourth conclusion of law, unchallenged by Defendants on appeal, the trial court concluded:

4. That as a direct result of [] Safely-Smith's actions in cutting power to Plaintiffs' dwelling units, each Plaintiff suffered direct and consequential damages to their units.

The trial court then concluded:

10. That pursuant to N.C.G.S. Chapter 75-16, et[] seq., Plaintiffs are entitled to an award of treble damages and attorney fees against [Defendants].

The trial court's findings of fact support these conclusions, and we agree with the trial court that Defendants are entitled to damages on their UDTP claims. The trial court found that Defendants rented campground spaces to Plaintiffs on a monthly basis and charged Plaintiffs for electricity. These activities undoubtedly constituted business activities; thus, Defendants' acts were in or affecting commerce. Furthermore, Defendants' acts in interfering with and disconnecting Plaintiffs' electricity were, at a minimum, unfair. *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403 ("A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.") (citation omitted). Finally, upon expert evidence presented by Plaintiffs, the trial court found that the electrical interruptions caused damage to Plaintiffs' RVs. Accordingly, the trial court properly awarded damages on Plaintiffs' UDTP claims regardless of whether Plaintiffs were residential tenants entitled to the protections of Chapter 42. Defendants' argument to the contrary is overruled.

**[4]** Defendants next argue that "[e]ven if the trial court properly concluded that Defendants' actions amounted to unfair or deceptive trade acts or practices, Plaintiffs are not entitled to an award of attorneys' fees." *See* N.C. Gen. Stat. § 75-16.1 (2005) (allowing for an award of attorney's fees in Chapter 75 actions). Defendants contend that there is no evidence in the record on appeal that "there was an unwarranted refusal by [Defendants] to fully resolve the matter which constitutes the basis of [the] suit." N.C. Gen. Stat. § 75-16.1(1) (2005). Defendants also contend that there is no evidence in the record to support the trial court's award of $18,112.50 as a reasonable attorney's fee.

"The purpose of attorneys fees in Chapter 75 . . . is to 'encourage private enforcement' of Chapter 75." *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 192, 437 S.E.2d 374, 380 (1993) (quoting *Marshall*, 302 N.C. at 549, 276 S.E.2d at 404) (footnote omitted). The award or denial of attorney's fees under section 75-16.1 is within the sole discretion of the trial court, *Borders v. Newton*, 68 N.C. App. 768, 315 S.E.2d 731 (1984), and a trial court may be reversed for abusing its discretion "only upon a showing that its actions are manifestly unsupported by reason." *Castle McCulloch, Inc. v. Freedman*, 169 N.C. App. 497, 504, 610 S.E.2d 416, 422 (citation omitted), *aff'd per curiam*, 360 N.C. 57, 620 S.E.2d 674 (2005). "The court must make specific findings of fact that the actions of the party charged with violating Chapter 75 were willful, that he refused to resolve the matter

fully, and that the attorney's fee was reasonable." *Barbee v. Atl. Marine Sales & Serv., Inc.*, 115 N.C. App. 641, 648, 446 S.E.2d 117, 122, *disc. review denied*, 337 N.C. 689, 448 S.E.2d 516 (1994). For this Court to determine whether an award is reasonable, the record on appeal must contain findings of fact that support the award. *Lapierre v. Samco Dev. Corp.*, 103 N.C. App. 551, 406 S.E.2d 646 (1991). "Appropriate findings include findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney." *Id.* at 561, 406 S.E.2d at 651 (citation omitted).

In the case at bar, the trial court found:

107. That because [] Safely-Smith willfully committed unfair and deceptive trade acts or practices in commerce within the meaning of N.C.G.S. 75-1.1 and there was an unwarranted refusal by [] Safely-Smith to fully resolve the matter which constitutes the basis of this suit, Plaintiffs are entitled to an award of reasonable attorney fees pursuant to N.C.G.S. 75-16.1.

This finding satisfies the trial court's obligation to find that Defendants "refused to resolve the matter fully[,]" *Barbee*, 115 N.C. App. at 648, 446 S.E.2d at 122, and as Defendants did not assign error to this finding, we presume the finding is supported by competent evidence. *Koufman*, 330 N.C. 93, 408 S.E.2d 729; N.C. R. App. P. 10(a). Thus, the trial court did not abuse its discretion in awarding attorney's fees.

However, we are unable to determine from the trial court's findings whether the amount of the award of attorney's fees was reasonable. The only findings that pertain to the reasonableness of the award are:

108. That [Plaintiffs' trial counsel] expended 103.5 hours in the representation of his clients and for preparation of this matter for trial.

109. That the amount of $18,112.50 is a reasonable amount for attorney fees considering the time and labor extended, the skill required to perform the legal services that were rendered and the experience and ability of [Plaintiffs' trial counsel], and said fee is the customary fee for like work.

These findings do not fully address the skill required to perform the legal services that were rendered or the experience and ability of

Plaintiffs' trial counsel. The trial court's decision to award attorney's fees is affirmed, but this case is remanded for additional findings of fact concerning the reasonableness of the amount of the fee.

Finally, we agree with Plaintiffs that "the trial court may include fees for services rendered at all stages of the litigation." *Cotton v. Stanley*, 94 N.C. App. 367, 370, 380 S.E.2d 419, 422 (1989) (citing *City Fin. Co. of Goldsboro v. Boykin*, 86 N.C. App. 446, 449, 358 S.E.2d 83, 85 (1987)). Because we remand this action to the trial court for additional findings, we also leave it to the trial court to address the issue of attorney's fees for the appeal.

## ROSSETER'S EMPLOYMENT

**[5]** Finally, Defendants argue the trial court erred in concluding that Rosseter was entitled to compensatory damages for the extra hours she worked as the campground's office manager. Defendants acknowledge in their brief that Rosseter worked more than was "required[,]" but argue that the parties never had a meeting of the minds concerning how Rosseter would be compensated for the extra time. Thus, Defendants contend Rosseter is not entitled to anything more than she has already received.

"A contract is the agreement of two minds—the coming together of two minds on a thing done or to be done." *Williams v. Jones*, 322 N.C. 42, 49, 366 S.E.2d 433, 438 (1988) (quotation marks and citation omitted). "There is no contract unless the parties assent to the same thing in the same sense." *Id.* In this case, the trial court's findings of fact establish that the parties assented to the same thing in the same sense: Defendants agreed to pay Rosseter $6.00 for each hour Rosseter worked after eighty-six hours per month. Rosseter initially accepted this compensation in the form of credits against her electricity charges and lot rental. Having been forced out of the campground by Defendants' disruption of her electrical service, Rosseter was no longer able to accept her due compensation in this form. Accordingly, by the express terms of the agreement, Rosseter is entitled to monetary compensation for hours worked for which she has not been compensated. Defendants' argument is overruled.

The awards granted pursuant to the Public Utilities Act for the overcharging of electricity are affirmed. The awards of damages pursuant to Plaintiffs' unfair and deceptive trade practices claims are affirmed. The award of damages on Rosseter's breach of contract claim is affirmed. This matter is remanded for additional findings of fact concerning the award of attorney's fees.

AFFIRMED IN PART; REMANDED IN PART.

Judge McGEE concurs.

Judge TYSON concurs in part and dissents in part with separate opinion.

TYSON, Judge, concurring in part and dissenting in part.

I concur with that portion of the majority's opinion to affirm the trial court's award of double damages to Tamitha Shepard, Beatrice Perry, William GMoser, and Debra Rosseter (collectively, "plaintiffs") for willful violations of the Public Utilities Act by Bonita Vista Properties, L.P. and Vickie Safely-Smith, as General Partner of Bonita Vista Properties, L.P., Trustee of FVS Trust, and individually, (collectively, "defendants"). I also concur with that portion of the majority's opinion to affirm the trial court's award to Debra Rosseter for wages she earned for hours worked as the campground's office manager and for which she was not compensated.

I disagree with that portion of the majority's opinion which affirms the trial court's award of treble damages and attorney's fees based upon plaintiffs' unfair and deceptive trade practices ("UDTP") claims. The trial court's conclusion of law stating that "[defendants'] trespass, [] attempts to wrongfully evict Plaintiffs without resort to judicial process and [] willfully charging electric rates in excess of that prescribed by the North Carolina Utilities Commission pursuant to G.S. 63-139 constituted unfair or deceptive trade practices in commerce within the meaning of N.C.G.S. 75-1.1" is erroneous as a matter of law. I vote to reverse the trial court's order in part and respectfully dissent.

## I. Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (citation and quotation omitted), *disc. rev. denied*, 356 N.C. 434, 572 S.E.2d 428 (2002). The trial court's conclusions of law are reviewed *de novo*. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

**SHEPARD v. BONITA VISTA PROPERTIES, L.P.**

[191 N.C. App. 614 (2008)]

## II. Unfair and Deceptive Trade Practices

The majority's opinion holds plaintiffs are entitled to treble damages and an award of attorney's fees based upon their UDTP claims, regardless of whether plaintiffs were residential tenants entitled to protections under Article 2A and Article 5 of Chapter 42, commonly known as the Residential Rental Agreement Act ("RRAA"). I disagree.

Here, plaintiffs alleged four separate UDTP claims, three of which pertain to each individual plaintiff. Plaintiffs specifically alleged: (1) a landlord-tenant relationship existed between defendants and plaintiffs; (2) defendants' " 'self help' actions amounted to a constructive eviction[;]" (3) "[d]efendants' self-help actions to remove or attempt to remove [plaintiffs] from Pine Lake RV Resort, were contrary to the manner prescribed by North Carolina statute, and therefore [d]efendants are liable to [plaintiffs] for damages caused by [plaintiffs] removal or attempted removal[;]" and (4) "[d]efendants' eviction of [plaintiffs] from the leased premises without resort to judicial process constituted unfair and deceptive acts or practices in commerce." Plaintiffs also argued extensively to the trial court and in their appellate brief that N.C. Gen. Stat. § 42, *et seq.*, is applicable, plaintiffs are entitled to the protections contained therein, and violations thereof trigger recovery under the UDTP statute.

Plaintiffs alternatively purport to argue in their appellate brief that their UDTP claims "were not based upon the allegation that Plaintiffs were residential tenants protected under North Carolina landlord-tenant laws." Clearly, this assertion is incredulous after review of the allegations listed above and expressly asserted within plaintiffs' complaint.

It is well established that "[a] party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive as against the pleader. He cannot subsequently take a position contradictory to his pleadings." *Davis v. Rigsby*, 261 N.C. 684, 686, 136 S.E.2d 33, 34 (1964). Our Supreme Court has also stated: "It is axiomatic with us that a litigant must be heard here on the theory of the trial below and he will not be permitted to switch horses on his appeal. Nor may he ride two horses going different routes to the same destination." *Graham v. Wall*, 220 N.C. 84, 94, 16 S.E.2d 691, 697 (1941). Plaintiffs are barred from arguing on appeal that defendants' actions constituted UDTP based upon a legal theory not asserted in plaintiffs' complaint and tried in the district court. *Id.*

SHEPARD v. BONITA VISTA PROPERTIES, L.P.

[191 N.C. App. 614 (2008)]

The majority's opinion asserts plaintiffs argued their UDTP claims were not dependent upon proving violations of Chapter 42 before the trial court. I disagree. Although plaintiffs' counsel made the bare statement to the trial court that "even if the Court would decide that there wasn't [a landlord-tenant relationship], that does not mean that the Plaintiff's [sic] case has now failed[,]" the substance and totality of plaintiffs' arguments are based upon defendants' violation of the RRAA. Even after plaintiffs' counsel made this statement, he extensively argued to the trial court that defendants' actions constituted "self-help constructive eviction" and presented the trial court with case law supporting the assertion that a violation of the RRAA equated to UDTP.

Further, the trial court expressly concluded as a matter of law:

3. That considering all the circumstances of Plaintiffs' tenancies, Plaintiffs were residential tenants who leased living spaces as their primary residences and Plaintiffs are entitled to assert claims under Article 5 and Article 2A of Chapter 42 of [t]he North Carolina General Statutes.

. . . .

9. That Defendant Safely-Smith's trespass, her attempts to wrongfully evict Plaintiffs without resort to judicial process and her willfully charging electric rates in excess of that prescribed by the North Carolina Utilities Commission pursuant to G.S. 63-139 constituted unfair or deceptive acts or practices in commerce within the meaning of N.C.G.S. 75-1.1.

Under the applicable standard of review, this Court must only determine: (1) if competent evidence supports the trial court's findings of fact; (2) whether the findings of fact support the trial court's conclusions of law; and (3) whether the trial court's conclusions are erroneous as a matter of law. *Cartin*, 151 N.C. App. at 699, 567 S.E.2d at 176; *Humphries*, 300 N.C. at 187, 265 S.E.2d at 190.

Defendants failed to except to any of the trial court's findings of fact. Without exceptions taken, the dispositive issue on *de novo* review is whether the trial court's conclusions are correct as a matter of law. *See State v. Pickard*, 178 N.C. App. 330, 333, 631 S.E.2d 203, 206 (2006) ("Where an appellant fails to assign error to the trial court's findings of fact, the findings are presumed to be correct. . . . However, the trial court's conclusions of law are reviewed *de novo* and must be legally correct." (Citation and quotation omitted)). The

trial court awarded plaintiffs treble damages and attorney's fees on three alternative bases: (1) defendants' trespass; (2) defendants' violation of the RRAA; and (3) defendants' violation of the Public Utilities Act. We unanimously agree that defendants violated the Public Utilities Act, plaintiffs are entitled to double damages under this statute, and a violation of the Public Utilities Act cannot also serve as a basis to award treble damages and attorney's fees on plaintiffs' UDTP claims. As such, plaintiffs' UDTP claims must be based upon either defendants' alleged trespass or violation of the RRAA. On the record before us, neither of these claims, nor other alleged conduct, supports an award of treble damages or attorney's fees under the UDTP statute.

### A. Trespass

Our Supreme Court has stated, "[i]t is elementary that trespass is a wrongful invasion of the possession of another. Furthermore, a claim of trespass requires: (1) possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff." *Singleton v. Haywood Elec. Membership Corp.*, 357 N.C. 623, 627, 588 S.E.2d 871, 874 (2003) (internal citations and quotations omitted).

Here, no evidence in the record shows defendants trespassed on any real property or chattel owned by plaintiffs. Nor is there any evidence that plaintiffs reimbursed defendants for the electricity they consumed during August 2005 when their occupancy at the campground ended. Record evidence tends to show that plaintiffs were *billed in arrears* for electricity consumed the previous month after defendants were billed by the electric company. Part of Rosseter's duties, as defendants' employee, was to invoice plaintiffs and others at the campground to reimburse defendants for electricity consumed the previous month.

Defendants merely disconnected plaintiffs' plug-in power drop cords from defendants' meter base and shut off the electricity to those connections at the end of the month. All plaintiffs left the campground the following day. Defendants were under no legal obligation to provide free electricity to plaintiffs. Defendants never entered any of plaintiffs' camper trailers, nor kept or converted any of plaintiffs' property or equipment. Defendants' actions on their private property and privately owned equipment cannot be construed as a trespass to plaintiffs' chattel or any other legally protected property interest. Further, camper trailers generally contain an independent and self-

contained means to generate electricity. Plaintiffs have failed to show all of the requisite elements to establish a claim of trespass.

Presuming *arguendo* a trespass in fact occurred, no North Carolina case law or statute supports the notion that an alleged trespass can be bootstrapped to support plaintiffs' UDTP claims and an award of treble damages and attorney's fees. The only remaining notion upon which plaintiffs' UDTP claims may rest is defendants' alleged violation of the RRAA.

## B. Residential Rental Agreement Act

The RRAA was enacted in response to our Supreme Court's decision in *Spinks v. Taylor*, 303 N.C. 256, 278 S.E.2d 501 (1981), which specifically held that at common law, a landlord was permitted to employ peaceable self-help measures in repossessing leased premises. *See* Robert S. Thompson, *Landlord Eviction Remedies Act-Legislative Overreaction to Landlord Self-Help*, 18 Wake Forest L. Rev. 25, 25 (1982) ("Recently, . . . the North Carolina General Assembly altered the common-law rule in response to ·a court of appeals decision applying the *Mosseller* doctrine." (Citing *Spinks v. Taylor*, 47 N.C. App. 68, 266 S.E.2d 857 (1980), *rev'd in part*, 303 N.C. 256, 278 S.E.2d 501 (1981)).

· Our General Assembly enacted Article 2A and Article 5 of Chapter 42 in order to "determine[] the rights, obligations, and remedies under *a rental agreement for a dwelling unit* within this State." N.C. Gen. Stat. § 42-38 (2005) (emphasis supplied). The plain and unambiguous language of the Act expressly limits the statute's applicability to "a rental agreement for a dwelling unit within this State" and enunciates the manner of ejectment residential landlords must employ when regaining possession of "a dwelling unit" from residential tenants, who breach their lease, or who hold over after their lease has expired. *See* N.C. Gen. Stat. § 42-25.6 (2005) ("It is the public policy of the State of North Carolina, in order to maintain the public peace, that a residential tenant shall be evicted, dispossessed or otherwise constructively or actually removed *from his dwelling unit* only in accordance with the procedure prescribed in Article 3 or Article 7 of this Chapter."). The RRAA expressly excludes "transient occupancy in a hotel, motel, or similar lodging" as well as "vacation rentals" from Chapter 42 summary ejectment protections. N.C. Gen. Stat. § 42-39 (2005).

The central issue then becomes whether paying for a recreational vehicle lot space at a campground constitutes "a rental agreement for

a *dwelling unit* in this State" pursuant to N.C. Gen. Stat. § 42-38, which would entitle plaintiffs to the protections accorded to residential tenants under the RRAA. (Emphasis supplied). In making this determination, this Court must recognize the Founding principle that "[s]tatutes in derogation of the common law . . . should be strictly construed" particularly where the "statute infringes upon common law property rights of others." *Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 401, 584 S.E.2d 731, 736 (2003) (quoting *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 479, 495 S.E.2d 711, 715, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998) and *Turlington v. McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988)); *see also Bell v. Page*, 2 N.C. App. 132, 137, 162 S.E.2d 693, 696 (1968).

The term "dwelling unit" is not specifically defined within the RRAA. *See* N.C. Gen. Stat. § 42-40 (2005). However, the term "[p]remises" is defined as "a dwelling unit, including mobile homes or mobile home spaces, and the structure of which it is a part and facilities and appurtenances therein and grounds, areas, and facilities normally held out for the use of residential tenants." N.C. Gen. Stat. § 42-40(2). Plaintiffs argue that recreational vehicle lot spaces in a transient campground are analogous to "mobile home spaces." I disagree. The logical extension of plaintiffs' argument is that a person, who is sleeping in their motor vehicle as their "principle residence" and who parks that vehicle on someone else's property, cannot be compelled to vacate that parking space, unless the property owner, under the threat of treble damages and attorney's fees, resorts to judicial ejectment to remove them from the property. This arcane result cannot be what the General Assembly intended when it enacted the RRAA.

Plaintiffs cite *Baker v. Rushing* in support of their assertion that plaintiffs were residential tenants pursuant to the RRAA. 104 N.C. App. 240, 409 S.E.2d 108 (1991). In *Baker*, this Court found genuine issues of material fact existed regarding whether occupants of a hotel could be considered "residential tenants." *Baker*, 104 N.C. App. at 247, 409 S.E.2d at 112. This Court concluded that "[w]hether the plaintiffs . . . were residential tenants must be determined by looking at all of the circumstances[.]" *Id.*

However, the factual scenario in *Baker* is clearly distinguishable from the facts at bar. In *Baker*, the plaintiffs resided in an "apartment" which contained "either one or two bedrooms, a kitchen/living room and a separate bath" which clearly constitutes a "dwelling unit." *Id.*

Here, plaintiffs parked their recreational vehicle in a designated space on defendants' property.

Whether a recreational vehicle lot space can be equated to "a dwelling unit" under the RRAA appears to be an issue of first impression in North Carolina. In *Comeau v. Vergato*, the New Hampshire Supreme Court resolved a similar controversy. 823 A.2d 764 (N.H. 2003). In *Comeau*, the defendant was a vehicle campground owner, who rented parking spaces, equipped with utilities to campers on a year-round basis. 823 A.2d at 765. The plaintiff rented a space and lived on the defendant's property in a camper/trailer from March 2001 through January 2002. *Id.* Plaintiff allegedly owed back rent and the defendant, the defendant's son and a campground employee: (1) entered plaintiff's camper; (2) removed some of the plaintiff's property; and (3) placed a "For Sale" sign on the plaintiff's camper. *Id.*

The plaintiff filed a petition with the district court requesting the return of her property and argued that the defendant was a landlord subject to a statute, which prohibited "willfully seizing, holding or otherwise directly or indirectly denying a tenant access to and possession of such tenant's property, other than by proper judicial process." *Id.* (quoting RSA 540-A:3, III (Supp. 2002)). In New Hampshire, "[l]andlord" is statutorily defined as "an owner, lessor or agent thereof who rents or leases *residential premises including manufactured housing or space in a manufactured housing park* to another person." *Id.* at 766 (quoting RSA 540-A:1) (emphasis supplied). The district court found a landlord-tenant relationship based upon the duration of plaintiff's stay at the campground. *Id.* The dispositive issue before the New Hampshire Supreme Court was "whether the plaintiff's premises were 'residential' within the meaning of the statute." *Id.*

In determining this issue, the New Hampshire Supreme Court was required to engage in statutory construction. *Id.* The Court stated:

the trial court overlooked the last clause of the definition for both "landlord" and "tenant," which states that "residential premises" includes "manufactured housing or space in a manufactured housing park." The inclusion of this phrase indicates that the legislature considered the form of the housing relevant in determining whether it is "residential." If the legislature intended the *duration* of the stay to be sufficient to establish a residence, it would be superfluous to include a specific *form* of housing within the ambit of the statute. Thus, the mere fact that the plaintiff

lived on the defendant's property for a certain length of time did not establish a landlord-tenant relationship, and the trial court erred as a matter of law in ruling otherwise.

Moreover, the definitions of both "landlord" and "tenant" specifically mention only one type of residential premises—manufactured housing. We believe it unlikely that the legislature intended "manufactured housing" to be just one of many examples of trailer and camper units encompassed within "residential premises." Elsewhere in the statutes, the legislature describes "manufactured housing" in exclusive terms, defining "manufactured housing" not to embrace "campers" and "recreational vehicles." Surely, if the legislature had intended campers and trailers to be residential premises, it would not have included as the sole example a type of residence that specifically excludes campers and trailers from its ambit.

*Id.* at 766-67 (emphasis original) (internal citations omitted).

The reasoning and holding in *Comeau* is particularly instructive to the case at bar. Here, our General Assembly specifically included mobile homes and mobile home spaces within the definition of "[p]remises" which is defined as "a dwelling unit." N.C. Gen. Stat. § 42-40(2). As the New Hampshire Supreme Court stated in *Comeau*, I also "believe it unlikely that the legislature intended ['mobile homes'] to be just one of many examples of trailer and camper units encompassed within [the term 'dwelling unit']." 823 A.2d at 767. Further, the definition of mobile homes for taxation purposes expressly excludes "trailers and vehicles required to be registered annually pursuant to Part 3, Article 3 of Chapter 20 of the General Statutes." N.C. Gen. Stat. § 105-316.7 (2005). A recreational vehicle is required to be registered under Part 3, Article 3 of Chapter 20. N.C. Gen. Stat. § 20-50 (2005). If the General Assembly intended for recreational vehicle lot spaces in a campground to be considered a "dwelling unit" pursuant to the RRAA, it would have expressly stated so in the statute.

Strictly construing Chapter 42 as in derogation of the common law, plaintiffs are not residential tenants under "a rental agreement for a dwelling unit" as provided in the RRAA and are not entitled to the judicial ejectment protections contained therein. N.C. Gen. Stat. § 42-38. Plaintiffs' "right" to park their recreational vehicle on defendants' campground was arguably nothing more than a revocable license. *See* 1 James A. Webster, Jr., Webster's Real Estate Law in

North Carolina § 15-39, at 753 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999) ("A license is the least important of the rights in the lands of another. As a matter of fact, a license does not create 'rights' in land but gives one only a personal, revocable privilege to do an act or series of acts upon the land of another with-·out conferring any estate or interest in the land. Hence, licenses are, in general, freely revocable by the licensor."). This assertion is supported by a registration card and not a lease being issued to each of the plaintiffs which stated the "property is privately owned and the management reserves the right to refuse service to anyone[.]"

Even if plaintiffs' stay on the campgrounds was construed to be a month-to-month tenancy, defendants provided plaintiffs with the statutorily required notice to quit their possession of defendants' property and were entitled to use peaceful self-help to unplug plaintiffs' electrical extension cords from defendants' meter bases and to shut off the power to those connections. *See* N.C. Gen. Stat. § 42-14 (providing in relevant part that a month-to-month tenancy may be terminated by a notice to quit of seven days); *see also Spinks*, 303 N.C. at 263, 278 S.E.2d at 505 ("[W]hile a landlord is permitted to use peaceful means to reenter and take possession of leased premises subject to forfeiture, he may not do so against the will of the tenant."). A party's lawful actions or peaceful self-help conduct is not an unfair and deceptive act and does not support recovery under the UDTP statute. The trial court erred as a matter of law by concluding plaintiffs were entitled to an award of treble damages and attorney's fees based upon a violation of the RRAA or any other claim alleged in plaintiffs' complaint.

### III.  Conclusion

I concur with that portion of the majority's opinion to affirm the trial court's award of double damages to plaintiffs based upon defendants' willful violations of the Public Utilities Act. I also concur with that portion of the majority's opinion to affirm the trial court's award of compensatory damages to Debra Rosseter based upon her breach of contract claim.

The trial court's conclusion of law that defendants' actions violated the UDTP statute based upon either: (1) defendants' alleged trespass; (2) a violation of the RRAA; or (3) a violation of the Public Utilities Act is erroneous as a matter of law. I vote to reverse the portion of the trial court's order awarding treble damages under the UDTP statute.

Because the trial court's order awarding attorney's fees is predicated upon plaintiffs' UDTP claims, that award must also be reversed. The majority's opinion correctly notes that the trial court's order and award of attorney's fees to plaintiffs is also fatally defective. I concur in part and respectfully dissent in part.